# United States Court of Appeals
# for the Eighth Circuit

————————————

**LeadingAge Minnesota and Care Providers of Minnesota,**

**Plaintiffs-Appellants,**

**vs.**

**Nicole Blissenbach,** *in her official capacity as Commissioner of the Minnesota Department of Labor and Industry*,

**Defendant-Appellee.**

_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA
_____

## BRIEF OF PLAINTIFFS-APPELLANTS
_____

FELHABER LARSON
Grant T. Collins, MN # 390654
Brandon J. Wheeler, MN #396336
220 South Sixth Street, Suite 2200
Minneapolis, Minnesota 55402
Telephone: (612) 339-6321
gcollins@felhaber.com
bwheeler@felhaber.com
*Counsel for Plaintiffs-Appellants*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Plaintiff-Appellant LeadingAge Minnesota and Plaintiff-Appellant Care Providers of Minnesota (together, "Plaintiffs-Appellants") sufficiently alleged that the Holiday Pay Rule is preempted by the National Labor Relations Act ("NLRA") because: (1) the Rule authorizes activity prohibited by the NLRA (or at least arguably prohibited by the NLRA) under the Supreme Court's decision in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959); and (2) the Rule regulates conduct that Congress intended to leave unregulated under the Supreme Court's decision in Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers v. Wisconsin Employment Relations Comm'n, 427 U.S. 132 (1976).

The District Court concluded that Plaintiffs-Appellants failed to plead a viable cause of action for preemption under Garmon or Machinists by applying an overly stringent pleading standard. The District Court improperly dismissed Plaintiffs-Appellants' claim under Garmon by failing to find that Plaintiffs-Appellants sufficiently alleged that the Holiday Pay Rule authorized conduct that was prohibited (or at least arguably prohibited) by the NLRA. The District Court improperly dismissed Plaintiffs-Appellants' claim under Machinists by concluding that the Holiday Pay Rule constitutes a "minimum labor standard" rather than regulating conduct Congress intended to leave unregulated. As a result, reversal is warranted.

Plaintiffs-Appellants respectfully request 20 minutes of oral argument.

ii

# CORPORATE DISCLOSURE STATEMENT

LeadingAge Minnesota is a Minnesota non-profit corporation. LeadingAge Minnesota does not have any parent corporations. No publicly held corporation owns 10% or more of the stock of LeadingAge Minnesota.

Care Providers of Minnesota is a Minnesota non-profit corporation. Care Providers of Minnesota does not have any parent corporations. No publicly held corporation owns 10% or more of the stock of CPM.

4505531.v2

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT .......... ii

CORPORATE DISCLOSURE STATEMENT ....................................................... iii

TABLE OF AUTHORITIES ........................................................................... vi

JURISDICTIONAL STATEMENT ....................................................................1

STATEMENT OF THE ISSUES........................................................................2

STATEMENT OF THE CASE............................................................................3

    A.     Plaintiffs-Appellants.................................................................................3

    B.     The Nursing Home Workforce Standards Board. ................................3

    C.     The Holiday Pay Rule. ...........................................................................4

    D.     Defendant-Appellee's Enforcement Authority. ...................................8

    E.     Impact of the Holiday Pay Rule on Plaintiffs-Appellants and Plaintiffs-Appellants' Members. ..........................................................8

        1.     The Holiday Pay Rule Mandates that Plaintiffs-Appellants' Members Nearly Double the Number of Paid Holidays. ........................................................................................9

        2.     The Holiday Pay Rule Will Cause Significant Financial Hardship to Plaintiffs-Appellants' Members..........................10

        3.     The Holiday Pay Rule Creates Artificial Distinctions Between Workers Employed by Plaintiffs-Appellants' Members...............................................................................11

        4.     The Holiday Pay Rule Upends Existing Labor Contracts and Gives Unions a Powerful Weapon in Collective Bargaining. ..............................................................................13

        5.     The Holiday Pay Rule Authorizes Employers to "Negotiate" with their Non-Union Workers. ...........................15

    F.     Procedural Background. .......................................................................16

    G.     The District Court's Decision. .............................................................16

SUMMARY OF ARGUMENT ......................................................................18

4505531.v2

ARGUMENT ...............................................................................................20

I.      Standard of Review.........................................................................20

II.     The District Court Erred by Improperly Dismissing the Complaint at
        the Pleading Stage..........................................................................20

III.    The District Court Erred In Finding that Plaintiffs-Appellants Failed
        to Sufficiently Allege that the Holiday Pay Rule Is Preempted Under
        Garmon. ........................................................................................22

        A.      The Holiday Pay Rule Infringes on Employees' Section 7 Right
                to "Refrain from" "Bargain[ing] Collectively" through
                Representatives of Their Choosing. ....................................25

        B.      The Holiday Pay Rule Expressly Authorizes Employers to
                Violate Section 8(a)(2) of the NLRA.................................29

                1.      The Holiday Pay Rule Creates a "Labor Organization" as
                        Defined by the NLRA..............................................30

                2.      The Holiday Pay Rule Creates Unlawful Domination or
                        Assistance of the "Affected Nursing Home Workers."............37

IV.     The District Court Erred in Finding that Plaintiffs-Appellants Failed
        to Sufficiently Allege that the Holiday Pay Rule Is Preempted Under
        Machinists.....................................................................................42

CONCLUSION ............................................................................................50

CERTIFICATES OF COMPLIANCE...............................................................52

8TH CIR. R. 28A(H) CERTIFICATION ............................................................53

CERTIFICATE OF SERVICE .........................................................................54

4505531.v2

# TABLE OF AUTHORITIES

## Cases

520 S. Mich. Ave. Assocs., Ltd. v. Shannon,
549 F.3d 1119 (7th Cir. 2008) ................................................................. 45, 46, 48

American Hotel & Lodging Association v. City of Los Angeles,
834 F.3d 958 (9th Cir. 2016) ......................................................................... 47, 49

Ampex Corp.,
168 NLRB 742 (1967), enfd. 442 F.2d 82 (7th Cir.1971), cert. denied 404
U.S. 939 (1971) .......................................................................................................34

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ........................................................................................ 20, 21

Associated Builders & Contractors v. Nunn,
356 F.3d 979 (9th Cir. 2004) .................................................................................49

Belknap, Inc. v. Hale,
463 U.S. 491 (1983) ...............................................................................................23

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ...............................................................................................21

Braden v. Wal-Mart Stores, Inc.,
588 F.3d 585 (8th Cir. 2009) .................................................................................21

Brown v. Hotel Employees,
468 U.S. 491 (1984) ...............................................................................................40

California Fed. Sav. & Loan Assoc. v. Guerra,
479 U.S. 272 (1987) ...............................................................................................26

Chamber of Commerce v. Bragdon,
64 F.3d 497 (9th Cir. 1995) ........................................................... 45, 46, 47, 50

Chamber of Commerce v. Brown,
554 U.S. 60 (2008) .................................................................................................49

Clapper's Manufacturing,
186 NLRB 324 (1970), enfd. 458 F.2d 414 (3rd Cir. 1972) ..............................39

Cook v. George's, Inc.,
952 F.3d 935 (8th Cir. 2020) .................................................................................20

Couchigian v. Rick,
489 F. Supp. 54 (D. Minn. 1980) ..........................................................................28

Duquesne University,
198 NLRB 891 (1972)................................................................38

Electromation, Inc.,
309 NLRB 990 (1992), enfd. 35 F.3d 1148 (7th Cir. 1994) ....................... passim

Employers Association, Inc. v. United Steelworkers,
32 F.3d 1297 (8th Cir. 1994)....................................................44

Fort Halifax Packing Co., Inc. v. Coyne,
482 U.S. 1 (1987) ................................................... 19, 46, 47

Galper v. JP Morgan Chase Bank, N.A.,
802 F.3d 437 (2d Cir. 2015) ..................................... 21, 22

Glick v. Western Power Sports, Inc.,
944 F.3d 714 (8th Cir. 2019)......................................................20

Goody's Family Clothing, Inc.,
Case 10-CA-26718, 1993 WL 726790, (Div. of Advice Sept. 21, 1993)25, 40, 41

Han–Dee Spring & Mfg. Co.,
132 NLRB 1542 (1961)...............................................................39

Hines v. Davidowitz,
312 U.S. 52 (1941) .....................................................................43

Idaho Bldg. & Const. Trades Council v. Inland Pac. Chapter of Associated
Builders & Contractors,
801 F.3d 950 (9th Cir. 2015)........................................... 23, 24, 32, 35

Int'l Longshoremen's Ass'n, v. Davis,
476 U.S. 380 (1986) ...................................................... 23, 24, 35

Keeler Brass Automotive Group,
317 NLRB 1110 (1995)..................................................... 38, 39

Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers v. Wisconsin
Employment Relations Comm'n,
427 U.S. 132 (1976) ....................................................... passim

Marine Eng'rs v. Interlake S.S. Co.,
370 U.S. 173 (1962) ...................................................................23

Metropolitan Life Ins. Co. v. Massachusetts,
471 U.S. 724 (1985) ....................................................... 19, 46, 47

4505531.v2

Midwest Motor Exp., Inc. v. International Broth. of Teamsters, Chauffeurs,
  Warehousemen and Helpers of America, Local 120,
  512 N.W.2d 881 (Minn. 1994) .......................................................................42

New York Telephone Co. v. New York State Dept. of Labor,
  440 U.S. 519 (1979) .....................................................................................44

NLRB v. Ampex Corp.,
  442 F.2d 82 (7th Cir. 1971) .................................................................... 35, 36

NLRB v. Cabot Carbon Co.,
  360 U.S. 203 (1959) .....................................................................................33

Ona Corp.,
  285 NLRB 400 (1987) ..................................................................................34

Ray v. Atlantic Richfield Co.,
  435 U.S. 151 (1978) .....................................................................................26

S&W Motor Lines, Inc.,
  236 NLRB 938 (1978) ..................................................................................30

San Diego Building Trades Council v. Garmon,
  359 U.S. 236 (1959) ............................................................................. passim

St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands,
  218 F.3d 232 (3d Cir. 2000) .........................................................................26

St. Vincent's Hospital,
  244 NLRB 84 (2979) ....................................................................................34

Thunderbird Mining Co. v. Ventura,
  138 F. Supp. 2d 1193 (D. Minn. 2001) .................................................. 43, 44, 45

United Steelworkers of Am. AFL-CIO-CLC v. Johnson,
  830 F.2d 924 (8th Cir. 1987) ........................................................................43

United Steelworkers v. St. Gabriel's Hosp.,
  871 F. Supp. 335 (D. Minn. 1994) ................................................................44

Wahlgren Magnetics,
  132 NLRB 1613 (1961) .................................................................................39

**Statutes**

28 U.S.C. § 1291 .............................................................................................1

29 U.S.C. § 152 .............................................................................................30

29 U.S.C. § 157 ..................................................................................... 22, 26

viii

29 U.S.C. § 158 ........................................................................ 22, 29, 36

29 U.S.C. § 159 ......................................................................... 27, 28, 29

Minn. Stat. § 177.27 ........................................................................ 8, 48

Minn. Stat. § 179.12 .............................................................................42

Minn. Stat. § 298.227 ..................................................................... 43, 44

Minn. Stat. §§ 181.211-218 ............................................................ passim

**Other Authorities**

NLRB, GC Memo. No. 93-4, 1993 WL 595235 (April 15, 1993) .........................36

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................. 2, 16, 20

Minn. Admin. R. 5200.2010 ..................................................... 4, 6, 7, 34

4505531.v2

# JURISDICTIONAL STATEMENT

Plaintiffs-Appellants commenced this lawsuit in the United States District Court for the District of Minnesota based on federal question jurisdiction, seeking a determination that the Holiday Pay Rule is preempted by the National Labor Relations Act ("NLRA").

Plaintiffs-Appellants appeal from the District Court's Judgment entered on May 27, 2025. (APP275, ADD046, R. Doc. 51, at 1.)  The District Court's judgment was entered pursuant to the District Court's Order dated May 23, 2025, by which the District Court granted Defendant-Appellee's Motion to Dismiss and denied Plaintiffs-Appellants' Motion for a Preliminary Injunction as moot. (APP230-274, ADD001-45, R. Doc. 50, at 1-45.)  This judgment disposed of all of the parties' claims.

Plaintiffs-Appellants filed their notice of appeal on June 20, 2025. (APP276, R. Doc. 52, at 1.)  This Court has jurisdiction over Plaintiffs-Appellants' appeal pursuant to 28 U.S.C. § 1291.

1

4505531.v2

**STATEMENT OF THE ISSUES**

I.     Whether the District Court erred in granting Defendant-Appellee's Motion to Dismiss and dismissing Plaintiffs-Appellant's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), as Plaintiffs-Appellants sufficiently alleged that the Nursing Home Workforce Standards Board's Holiday Pay Rule is preempted by federal labor law?

**Apposite Authority:**  Fed. R. Civ. P. 12(b)(6); San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959); Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers v. Wisconsin Employment Relations Comm'n, 427 U.S. 132 (1976).

4505531.v2

**STATEMENT OF THE CASE**

**A.      Plaintiffs-Appellants.**

Plaintiff-Appellant LeadingAge Minnesota is a non-profit corporation organized under Minnesota law and headquartered in Minnesota.  (APP003, R. Doc. 22, at 3 ¶ 6.) LeadingAge Minnesota is an association of over 1,000 member organizations across Minnesota, representing organizations providing services along the full spectrum of post-acute care and long-term services and support, including what are commonly referred to as "nursing homes."  (Id.)

Plaintiff-Appellant Care Providers of Minnesota is a non-profit corporation organized under Minnesota law and headquartered in Minnesota.  (APP003, R. Doc. 22, at 3 ¶ 7.)  Care Providers of Minnesota is an association of over 1,000 member organizations across Minnesota, representing organizations providing services along the full spectrum of post-acute care and long-term services and support, including what are commonly referred to as "nursing homes."  (Id.)

**B.      The Nursing Home Workforce Standards Board.**

In 2023, the Minnesota legislature created the Nursing Home Workforce Standards Board ("NHWSB") as a state agency housed within the Minnesota Department of Labor and Industry.  See Minn. Stat. §§ 181.211-218.  The Board is made up of nine voting members: the Commissioners of the Department of Human Services, the Department of Health, and the Department of Labor and Industry; three

3

4505531.v2

members who represent "nursing home employers or employer organizations"; and three members who represent "nursing home workers or worker organizations." Minn. Stat. § 181.212, subd. 1(a).

The NHWSB was initially tasked with, among other things, "adopt[ing] rules establishing minimum nursing home employment standards that are reasonably necessary and appropriate to protect the health and welfare of nursing home workers," and "adopt[ing] rules establishing initial standards for wages for nursing home workers." Minn. Stat. § 181.213, subd. 1(a)–(b).

**C. The Holiday Pay Rule.**

On August 24, 2024, the NHWSB published the Proposed Expedited Permanent Modifying Certification Criteria, Notice Posting Requirements, and Holiday Pay Rules for Nursing Home Workers, Minnesota Rules, Part 5200.2000 to 5200.2050 (hereafter "the Holiday Pay Rule"). 49 Minn. State Reg. 191-97 (Aug. 26, 2024). The Holiday Pay Rule took effect on January 1, 2025.

One provision of the Holiday Pay Rule – Minn. Admin. R. 5200.2010 – mandates that nursing home employers pay covered nursing home workers one-and-one-half of their regular hourly wage for all hours worked on one of 11 state holidays. The Holiday Pay Rule also permits employers to negotiate with their workers (or their workers' union) to adjust up to four of the 11 holidays to different

4

4505531.v2

dates that are not recognized as state holidays (e.g., the day after Thanksgiving, Christmas Eve, Easter, etc.).  The Holiday Pay Rule provides in relevant part:

**5200.2000   DEFINITIONS.**

. . .

**Subp. 4.  Holiday.**  "Holiday" means the following dates: New Year's Day, January 1; Martin Luther King's Birthday, the third Monday in January; Washington's and Lincoln's Birthday, the third Monday in February; Memorial Day, the last Monday in May; Juneteenth, June 19; Independence Day, July 4; Labor Day, the first Monday in September; Indigenous Peoples' Day, the second Monday in October; Veterans Day, November 11; Thanksgiving Day, the fourth Thursday in November; and Christmas Day, December 25. A holiday is a 24-hour period comprised of the time from midnight of the date designated as a holiday to the next midnight.

. . .

**5200.2010   HOLIDAY PAY.**

**Subpart 1. Holiday pay.** Beginning January 1, 2025, a nursing home worker who works any holiday shall be paid a minimum of time-and-one-half their regular hourly wage for all hours worked during the holiday.

**Subp. 2. Modification of holiday date and time.**

A.      The start and stop times for the 24-hour period comprising a holiday can be modified by a nursing home employer if agreed upon by a majority of affected nursing home workers or the exclusive representative of the affected nursing home workers if one exists.

B.      A nursing home employer may substitute up to four holidays for an alternate day in the same calendar year if the substitution is agreed upon by a majority of affected nursing home workers or

5

the exclusive representative of the affected nursing home workers if one exists.

C.     Any agreement to modify a holiday date or time must be made in the calendar year preceding the start of the calendar year in which the modified holiday is observed. There must be written record of an agreement under this item.

D.     The nursing home employer must retain a record of agreement to modify a holiday date or time under item C for a minimum of three years following the observation of the modified holiday.

49 Minn. State Reg. 193 (Aug. 26, 2024) (codified at Minn. R. Admin. 5200.2010).

Guidance issued by Defendant-Appellee describes how nursing home employers can take steps to change the holiday dates:

Q:     *I want to switch 4 holidays on the list for other holidays. We are not unionized. How do we determine how to arrive at agreement on this with a majority of affected nursing home workers?*

A:     First determine who in your staff qualify as nursing home workers under the rules. A majority would be fifty percent of those workers plus one. ***Then find a way to discuss and make a decision together.*** This could be ***a meeting with a vote at the end, a survey monkey, a petition in the break room, or any other reasonable way for workers to let their voices be heard***. Just keep in mind that you will need to keep a record of the agreement for a minimum of 3 years after the observation of the modified holiday. That could look like meeting minutes, records of vote numbers and when the vote was held, a copy of the petition or something similar.

(APP010-11, R. Doc. 22, at 10-11 (emphasis added).)[1]

---

[1]     Also available at: https://www.dli.mn.gov/sites/default/files/pdf/ nhwsb_how_to_holiday_pay_111424.pdf

4505531.v2

Defendant-Appellees issued similar guidance for how nursing home employers can alter the holiday times:

> *Q:* *I want to change the timing of the holiday to be from midnight to 11:59 p.m. to 6:00 p.m. the night before to 5:59 p.m. the day of the holidays. We are not unionized. How do we determine how to arrive at agreement on this with a majority of affected nursing home workers?*
>
> A: First determine who in your staff qualify as nursing home workers under the rules. A majority would be fifty percent of those workers plus one. ***Then find a way to discuss and make a decision together.*** This could be ***a meeting with a vote at the end, a survey monkey, a petition in the break room, or any other reasonable way for workers to let their voices be heard.*** Just keep in mind that you will need to keep a record of the agreement for a minimum of 3 years after the observation of the modified holiday. That could look like meeting minutes, records of vote numbers and when the vote was held, a copy of the petition or something similar.

(APP010-11, R. Doc. 22, at 10-11 (emphasis added).)

The Holiday Pay Rule mandates time-and-one-half "holiday pay" for specific categories of workers for specific employers in a specific industry. That is, the Holiday Pay Rule seeks to mandate such "holiday pay" for certain "nursing home workers" of "nursing home employers" starting on January 1, 2025. The Holiday Pay Rule also seeks to provide methods for the modification of the holiday pay mandate if "agreed upon by a majority of affected nursing home workers." Minn. R. Admin. 5200.2010, subp. 2.

4505531.v2

**D.     Defendant-Appellee's Enforcement Authority.**

Defendant-Appellee Commissioner of the Minnesota Department of Labor and Industry is responsible for enforcing rules promulgated by the NHWSB.  Minn. Stat. § 177.27, subd. 4 ("The commissioner may issue an order requiring an employer to comply with . . . any rule promulgated under section . . . 181.213, or 181.215.").  Defendant-Appellee is also authorized to "bring an action in the district court . . . to enforce or require compliance with orders . . . ."  Id., subd. 5.  If an employer is found to have violated a rule promulgated by the NHWSB, Defendant-Appellee can seek "back pay, gratuities, and compensatory damages" as well as "an additional civil penalty of up to $10,000 for each violation for each employee."  Id., subd. 7.

**E.     Impact of the Holiday Pay Rule on Plaintiffs-Appellants and Plaintiffs-Appellants' Members.**

The Holiday Pay Rule significantly impacts Plaintiffs-Appellants and Plaintiffs-Appellants' members.  (See generally APP056-62, R. Doc. 29-1, at 1-7 (Brown Decl.); APP063-68, R. Doc. 29-2, at 1-6 (Hejhal Decl.); APP069-70, R. Doc. 29-3, at 1-2 (Greely Decl.).)[2]  For Plaintiffs-Appellants' members, the impact is not only financial but it also includes the creation of previously non-existent distinctions between classes of workers depending on the location of their work,

---

[2] Each of these organizations are members of Plaintiffs-Appellants.  (APP229, R. Doc. 48, at 1 (Schulz Decl.).)

expressly authorizing Plaintiffs-Appellants' members to engage in unlawful collective bargaining with their employees, providing unions with significant bargaining power mid-contract, and creating compliance and legal risks for Plaintiffs-Appellants' members by failing to define key terms. (Id.) Plaintiffs-Appellants attempted to assist their members with complying with the Holiday Pay Rule by publishing written guidance as well as hosting a webinar for members.

### 1. The Holiday Pay Rule Mandates that Plaintiffs-Appellants' Members Nearly Double the Number of Paid Holidays.

The Holiday Pay Rule mandates that "nursing home employers" pay "nursing home workers" time-and-a-half "holiday pay" for 11 specific holidays. The problem, however, is that Plaintiffs-Appellants' members did not recognize 11 holidays for purposes of premium pay. Instead, Plaintiffs-Appellants' members generally recognized six or seven holidays. (See APP058, R. Doc. 29-1, at 3 ¶ 8 (Brown Decl.); APP065-66, R. Doc. 29-2, at 3-4 ¶ 8 (Hejhal Decl.); APP070, R. Doc. 29-3, at 2 ¶ 7 (Greely Decl.).) Of the examples submitted to the District Court, none of the organizations recognize the following five holidays for purposes of premium pay: (1) Martin Luther King Day, (2) Presidents Day, (3) Juneteenth, (4) Indigenous Peoples' Day, and (5) Veterans Day. What is more, Plaintiffs-Appellants' members who are affiliated with religious organizations typically recognize religious holidays that are not state holidays, such as Easter. (See APP057-58, R. Doc. 29-1, at 2-3 ¶¶ 2 & 8 (Brown Decl.); APP070, R. Doc. 29-3, at

9

1-2 ¶¶ 2 & 7 (Greely Decl.).) As a result of the Holiday Pay Rule, Plaintiffs-Appellants' members are forced to pay time-and-one-half to all "nursing home workers" who work on all 11 holidays recognized by state law.

In addition, even for those holidays recognized by Plaintiffs-Appellants' members, Plaintiffs-Appellants' members do not always pay holiday premium pay for the 24-hour periods starting at midnight on the holiday. Instead, some members have holiday pay practices that follow employees' schedules, such as 10:00 p.m. the day before the holiday (which is typically the start of the overnight or "NOC" shift) and ending at 10:00 p.m. on the holiday. (APP065-66, R. Doc. 29-2, at 3-4 ¶¶ 8 & 11 (Hejhal Decl.).)

### 2. *The Holiday Pay Rule Will Cause Significant Financial Hardship to Plaintiffs-Appellants' Members.*

Because Plaintiffs-Appellants' members do not pay premium pay for work on all of the 11 state holidays recognized by the Holiday Pay Rule, two of Plaintiffs-Appellants' members estimate that their organizations will incur unrecoverable costs in excess of *$700,000 per year*, (APP059, R. Doc. 29-1, at 4 ¶ 13 (Brown Decl.), and *$545,975 per year*, (APP068, R. Doc. 29-2, at 6 ¶ 14 (Hejhal Decl. ¶ 14)). One of Plaintiffs-Appellants' smaller members, a member who operates only *one facility* in Albert Lea, Minnesota, reported that it will incur costs in excess of *$54,000 per year*. (APP070, R. Doc. 29-3, at 2 ¶ 10 (Greely Decl.).) If the Holiday Pay Rule is unconstitutional or held to be invalid, Plaintiffs-Appellants' members have no means

10

of recovering these costs. (APP068, R. Doc. 29-2, at 6 ¶ 14 (Hejhal Decl.); APP070, R. Doc. 29-3, at 2 ¶ 10 (Greely Decl.).)

According to one of Plaintiffs-Appellants' members, the financial impact of the Holiday Pay Rule will significantly impact her organization and the skilled-nursing industry as a whole:

> The NHWSB mandate leaves our [Skilled Nursing Facilities or "SNFs"] struggling to cover the additional costs imposed by the Holiday Pay Rule. The current rate structure lacks a timely and responsive recovery mechanism, and any potential relief is at least 27 months away. This unfunded situation places a significant burden on our SNFs, forcing them to absorb these extra costs without immediate financial support. The absence of a clear path to offset these expenses exacerbates the financial strain, making it challenging to maintain operations and provide quality care. While the intentions of the NHWSB may be good, the actual impact will be detrimental to SNFs providing essential care to Minnesota's aging population, as we . . . do not have the revenue source to cover costs imposed by external decision makers.

(APP067-68, R. Doc. 29-2, at 4-5 ¶ 13 (Hejhal Decl.).)

> ### 3. The Holiday Pay Rule Creates Artificial Distinctions Between Workers Employed by Plaintiffs-Appellants' Members.

Plaintiffs-Appellants' members generally do not operate standalone "nursing homes" as defined by Minn. Stat. § 181.211, subd. 7. Instead, most nursing homes operated by Plaintiffs-Appellants' members are co-located on a larger campus that provides other senior services and living arrangements, such as assisted living, independent living, and adult-day services ("Hybrid Facilities"). (See APP057-58, R. Doc. 29-1, at 2-3 ¶¶ 4-5 (Brown Decl.); APP064-65, R. Doc. 29-2, at 3-4 ¶¶ 4-5

4505531.v2

(Hejhal Decl.); APP070, R. Doc. 29-3 at 2 ¶¶ 4-5 (Greely Decl.).) These portions of the campus are not classified as a "nursing home" as defined by Minn. Stat. § 181.211, subd. 7 ("non-Nursing Home facilities") and they are therefore not subject to the Holiday Pay Rule. (See APP057-58, R. Doc. 29-1, at 2-3 ¶¶ 4-5 (Brown Decl.); APP064-65, R. Doc. 29-2, at 3-4 ¶¶ 4-5 (Hejhal Decl.); APP070, R. Doc. 29-3 at 2 ¶¶ 4-5 (Greely Decl.).)

For example, one of Plaintiffs-Appellants' members operates a single senior living facility located at 1201 Garfield Avenue in Albert Lea, Minnesota. (APP070, R. Doc. 29-3, at 2 ¶ 4 (Greely Decl.).) The campus includes several interconnected buildings that provide different living options to seniors, including: independent living, assisted living, the health care center / skilled nursing; rehabilitation / short term transitional care; and the design center. While portions of the campus are classified as a "nursing home" by Minn. Stat. § 181.211, subd. 7, such as the "health care center / skilled nursing," other portions of the campus, such as assisted living and independent living, are not classified as a "nursing home" for purposes of the Holiday Pay Rule. (APP070, R. Doc. 29-3, at 2 ¶ 4 (Greely Decl.).)

Applying the Holiday Pay Rule to Hybrid Facilities – such as the senior living facility located at 1201 Garfield Avenue in Albert Lea, Minnesota – is difficult because employees working in a "nursing home" are not paid differently than employees working elsewhere on the campus. (See APP057-58, R. Doc. 29-1, at 2-

12

3 ¶¶ 4-6 (Brown Decl.); APP064-65, R. Doc. 29-2, at 3-4 ¶¶ 4-6 (Hejhal Decl.); APP070, R. Doc. 29-3 at 2 ¶¶ 4-6 (Greely Decl.).) Stated differently, the pay policies of Plaintiffs-Appellants' members do not distinguish between employees who work in a "nursing home" as defined by the Holiday Pay Rule and employees who perform work in non-Nursing Home facilities that may be connected to or in the same building as the "nursing home."

What is more, at Hybrid Facilities, some workers perform work throughout the campus. (See APP057-58, R. Doc. 29-1, at 2-3 ¶¶ 4-5 (Brown Decl.); APP064-65, R. Doc. 29-2, at 3-4 ¶¶ 4-5 (Hejhal Decl.); APP070, R. Doc. 29-3 at 2 ¶¶ 4-5 (Greely Decl.).) That is, they perform work in the Nursing Home and in non-Nursing Home facilities. For example, dietary employees may deliver meals to residents in the Nursing Home and to residents in independent or assisted living. Similarly, environmental services employees may clean areas of the Nursing Home as well as areas of assisted living or independent living. (Id.)

### 4. The Holiday Pay Rule Upends Existing Labor Contracts and Gives Unions a Powerful Weapon in Collective Bargaining.

For Plaintiffs-Appellants' members who employ workers in accordance with a collective bargaining agreement ("CBA"), the CBA generally specifies the holiday pay practices that are specific to these employees. (See APP058, R. Doc. 29-1, at 3 ¶ 9 (Brown Decl.).) This can include holidays that are not covered by the Holiday Pay Rule, such as Christmas Eve, Easter, and the Friday after Thanksgiving.

13

Nevertheless, the employer must negotiate and reach agreement with the labor union representing employees before it can make any changes to its pay practices. (See APP066-67, R. Doc. 29-2, at 4-5 ¶ 11 (Hejhal Decl.).) For example, an employer paying double-time to employees on six holidays could not unilaterally reduce its pay to one-and-one-half for the 11 state holidays mandated by the Holiday Pay Rule. Instead, federal labor law would arguably permit the labor union to hold those extra holidays "hostage" and require that the employer continue paying double-time on those holidays and pay time-and-one-half on the five additional state holidays mandated by the Holiday Pay Rule. In addition, one of Plaintiffs-Appellants' members reports that its holiday pay times do not begin at midnight, so it is forced to pay additional holiday pay to workers in the absence of an agreement with its employees' exclusive bargaining representative. (See APP066-67, R. Doc. 29-2, at 4-5 ¶ 11 (Hejhal Decl.).)

As it relates to implementing the Holiday Pay Rule, one of Plaintiffs-Appellants' members has been threatened with "grievances," "unfair labor practice charges," and "contact[ing] the appropriate governing agencies" by unions representing "nursing home workers." (See APP058-59, R. Doc. 29-1, at 3-4 ¶ 10 (Brown Decl.).) The same member also reported that "[t]he Holiday Pay Rule has . . . been used by union representatives during collective bargaining to try to obtain additional concessions from [the employer]." (Id.)

14

### 5. The Holiday Pay Rule Authorizes Employers to "Negotiate" with their Non-Union Workers.

For Plaintiffs-Appellants' members who employ workers who are not covered by a CBA, the Holiday Pay Rule authorizes a form of "bargaining" with a "majority" of its "nursing home workers."

For example, one of Plaintiffs-Appellants' members described the process by which it proposed to its employees to "convert the seven (7) holidays that were paid at "double time" or "time-and-one-half" to eleven (11) holidays paid at time-and-one-half, including Easter and Christmas Eve in place of Veteran's Day and President's Day." (See APP058-59, R. Doc. 29-1, at 3-4 ¶ 11 (Brown Decl.).)

The employer prepared a ballot that was given to employees. (See APP061-62, R. Doc. 29-1, at 6-7 (Brown Decl.).) The ballot provided:

---

**In order to provide Easter and Christmas Eve as holidays, we need your approval.**
Please vote by following the directions below. After we have the vote results, we will begin sharing the new holiday rotations and scheduling procedures moving forward. Note: New Year's 2025 will remain with the existing procedures and pay policies.

**Fold and tear on dotted lines and place your vote in one box and your name in the other**

| Place in <u>Vote</u> Box | Place in <u>Name</u> Box |
|---|---|
| ☐ **Yes** – I want my site to have these 11 holidays: | This helps us ensure we have a majority of our team's vote and still keeps your actual vote private. |
| New Year's Day — Martin Luther King's Birthday | |
| Easter — Memorial Day | |
| Juneteenth — Independence Day | **Name**_____\|_____ |
| Labor Day — Indigenous Peoples' Day | |
| Thanksgiving Day — Christmas Eve | |
| Christmas Day | |
| ☐ **No** – I do not want these 11 holidays | |

---

15

(Id.)  Employees "voted" on the employer's proposal.  (Id.)

**F.      Procedural Background.**

Plaintiffs-Appellants filed their Complaint on November 26, 2024, and their Amended Complaint on January 8, 2025.  (APP001-16, R. Doc. 22, at 1-16.)

On January 27, 2025, Plaintiffs-Appellants brought a Motion for a Preliminary Injunction or, in the alternative, for a Temporary Restraining Order, requesting that the District Court enjoin enforcement of the Holiday Pay Rule. (APP017, R. Doc. 26, at 1.)

On January 29, 2025, Defendant-Appellee filed a Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and arguing that the Amended Complaint failed to assert a legally cognizable theory.  (APP075, R. Doc. 32, at 1.)

**G.      The District Court's Decision.**

On May 23, 2025, the District Court entered an order granting Defendant-Appellee's Motion to Dismiss and denying, as moot, Plaintiffs-Appellants' Motion for Preliminary Injunction.  (APP230-274, ADD001-45, R. Doc. 50, at 1-45.)

Although the District Court concluded that Plaintiffs-Appellants had associational standing to pursue their claims, the District Court concluded that the Amended Complaint did not state a viable preemption claim under either Garmon or Machinists.  (See generally APP230-274, ADD001-45, R. Doc. 50, at 1-45.)

16

On May 27, 2025, the District Court issued its judgment pursuant to that Order. (APP275, ADD046, R. Doc. 51, at 1.) On June 20, 2025, Plaintiffs-Appellants filed their notice of appeal. (APP276, R. Doc. 52, at 1.)

Plaintiffs-Appellants now submit their opening brief and ask this Court to reverse the District Court's Order and Judgment and remand to the District Court with instructions to consider Plaintiffs-Appellants' Motion for a Preliminary Injunction.

17

## SUMMARY OF ARGUMENT

Plaintiffs-Appellants challenge the District Court's decision to dismiss its Amended Complaint.

*First*, the District Court erred in finding that Plaintiffs-Appellants failed to plead a viable cause of action for preemption under <u>Garmon</u> or <u>Machinists</u> by applying an overly stringent pleading standard and prematurely resolving factual disputes that must be addressed after discovery.

*Second*, Plaintiffs-Appellants have sufficiently alleged that the Holiday Pay Rule is preempted under <u>Garmon</u> because (1) the Holiday Pay Rule violates employees' Section 7 "right to refrain from" "bargain[ing] collectively through representatives of their own choosing" and (2) the Holiday Pay Rule specifically authorizes non-union employers to violate Section 8(a)(2) of the NLRA by engaging in "negotiations" with a "majority" of their unrepresented employees. Contrary to the District Court's conclusion, the Holiday Pay Rule mandates conduct that is at least "arguably prohibited" under <u>Garmon</u>.

*Third*, Plaintiffs-Appellants have sufficiently alleged that the Holiday Pay Rule is preempted under <u>Machinists</u> because the Holiday Pay Rule improperly shifts the carefully crafted "balance of bargaining power struck by Congress." Contrary to the District Court's conclusion, the Holiday Pay Rule is not a "minimum state labor standard" as described by the Supreme Court in <u>Metropolitan Life Ins. Co. v.</u>

18

<u>Massachusetts</u>, 471 U.S. 724 (1985) and <u>Fort Halifax Packing Co., Inc. v. Coyne</u>, 482 U.S. 1 (1987).

Accordingly, this Court should reverse the District Court's Order and Judgment and remand with instructions to consider Plaintiffs-Appellants' Motion for a Preliminary Injunction.

4505531.v2

# ARGUMENT

## I.    STANDARD OF REVIEW.

This Court "review[s] *de novo* a grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6), accepting as true all factual allegations in the light most favorable to the nonmoving party." Glick v. Western Power Sports, Inc., 944 F.3d 714, 717 (8th Cir. 2019) (citing Fed. R. Civ. P. 12(b)(6)).

To survive a motion to dismiss, a complaint must allege sufficient facts to state a facially plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "To determine whether a complaint states a facially plausible claim, [the Court] accept[s] the factual allegations in the complaint as true and draw[s] all reasonable inferences in the nonmovant's favor." Cook v. George's, Inc., 952 F.3d 935, 938 (8th Cir. 2020). The Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." Glick, 944 F.3d at 717. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

## II.    THE DISTRICT COURT ERRED BY IMPROPERLY DISMISSING THE COMPLAINT AT THE PLEADING STAGE.

The District Court concluded that Plaintiffs-Appellants failed to plead a viable cause of action for preemption under Garmon or Machinists by applying an overly stringent pleading standard and prematurely resolving factual disputes that must be addressed after discovery.

20

4505531.v2

Under <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009), the question at this stage is not whether Plaintiffs-Appellants have proven preemption, but whether they have plausibly alleged it. Plaintiffs-Appellants' Amended Complaint included detailed factual allegations explaining how provisions of the Holiday Pay Rule infringe on employees' Section 7 rights to "retrain from" "bargain[ing] collectively" and how the Rule expressly authorizes employers to violate Section 8(a)(2) of the NLRA.

The District Court erred by crediting the State's characterization of the Rule as a neutral labor standard without accepting Plaintiffs-Appellants' well-pleaded allegations that the Holiday Pay Rule mandates conduct that is at least "arguably prohibited" under <u>Garmon</u> and impermissibly interferes with the bargaining process under <u>Machinists</u>. At the pleadings stage, such allegations must be taken as true, and dismissal is inappropriate if there is any set of facts under which Plaintiffs-Appellants could prevail. <u>See</u> <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir. 2009).

As the Second Circuit explained, when evaluating a preemption argument, a court must be "mindful of the procedural context in which [it] conduct[s] this preemption inquiry." <u>Galper v. JP Morgan Chase Bank, N.A.</u>, 802 F.3d 437, 443 (2d Cir. 2015). Accordingly, "when considering a preemption argument in the context of a motion to dismiss, the factual allegations relevant to preemption must

21

be viewed in the light most favorable to the plaintiff." Id. at 444.  The District Court failed to do so in this case and, as a result, this Court should reverse the District Court's decision.

**III.** **THE DISTRICT COURT ERRED IN FINDING THAT PLAINTIFFS-APPELLANTS FAILED TO SUFFICIENTLY ALLEGE THAT THE HOLIDAY PAY RULE IS PREEMPTED UNDER GARMON.**

In San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), the Supreme Court held that the NLRA preempts the states from regulating conduct that is "*arguably* protected or prohibited" by the NLRA: "When an activity is arguably subject to § 7 or § 8 of the Act [29 U.S.C. § 157 or § 158], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Id. at 245.  The "*arguably* protected or prohibited" test broadly preempts state laws and claims without regard to the substance of the state regulation.  Under Garmon, states are prohibited from not only setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the NLRA.[3]

---

[3] There are two exceptions to Garmon preemption. Under the Garmon exceptions, conduct that is "arguably protected or prohibited" by the NLRA is ***not*** preempted if: (1) the conduct is only a peripheral concern of the NLRA or (2) the conduct "touches interests deeply rooted in local feeling and responsibility."  Belknap, Inc. v. Hale,

4505531.v2

If conduct is "*arguably* protected or prohibited," the party claiming preemption must show that the National Labor Relations Board ("NLRB") could legally decide the case in its favor. Int'l Longshoremen's Ass'n, v. Davis, 476 U.S. 380, 395 (1986). As courts have made clear, "[t]his is *__not__* a demanding standard." Idaho Bldg. & Const. Trades Council v. Inland Pac. Chapter of Associated Builders & Contractors, 801 F.3d 950, 965 (9th Cir. 2015) (emphasis added). To succeed in its claim for Garmon preemption Plaintiffs-Appellants must (1) "advance an interpretation of the [NLRA] that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the [NLRB]" and (2) offer "enough evidence to enable the court to find that the [NLRB] reasonably could uphold a claim based on such an interpretation." Davis, 476 U.S. at 394-95 (quoting Marine Eng'rs v. Interlake S.S. Co., 370 U.S. 173, 184 (1962)).

The District Court improperly attempted to narrow the "*arguably* protected or prohibited" standard set forth in Garmon. As the District Court explained, it would apply the "*arguably* protected or prohibited" standard *__only__* in a situation involving a "*close call*":

> It is true that Garmon preemption "forbids States to regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." Idaho Bldg. & Const. Trades Council, 801 F.3d at 956 (quotation omitted). ***But that is a standard of deference that a Court must provide***

463 U.S. 491, 498 (1983); Garmon, 359 U.S. at 243-44. Neither are applicable in this case.

4505531.v2

***to the NLRB when a given factual scenario presents a <u>close call</u>***, such that the NLRB might consider the same factual scenario and rule in an employee's favor.

(APP255-256, ADD026-27, R. Doc. 50, at 26-27.) The District Court defined a "close call" as a situation in which the state law "by its terms" or "on its face" violated the NLRA. (<u>Id.</u>) As the District Court explained:

> Short of some more explicit language in the Rule itself, the Court refuses to strike down the Rule on the basis that an employer might independently violate the NLRA at some point in the future. Consequently, the Rule does not run afoul of Garmon on this ground either

(APP259, ADD030, R. Doc. 50, at 30.) This is not the standard.

Under <u>Garmon</u>, Plaintiffs-Appellants need only show that their construction of the NLRA is ***possible*** – not that it is ***likely*** or even ***certain***. As the Ninth Circuit recently explained:

> In asserting Garmon preemption, the [plaintiffs] bear the burden "to demonstrate that [this issue] is one that the Board could legally decide in [their] favor." <u>Davis</u>, 476 U.S. at 395. ***This is not a demanding standard; the [plaintiffs] need not, for example, show that the Board will or is even likely to ultimately agree with their position.*** Rather, they need only "advance an interpretation of the [NLRA] that is not plainly contrary to its language and that has not been authoritatively rejected by the courts or the Board."

<u>Idaho Bldg. & Const. Trades Council</u>, 801 F.3d at 965 (quoting <u>Davis</u>, 476 U.S. at 395). Here, Plaintiffs-Appellants have sufficiently alleged that the Holiday Pay Rule is preempted under <u>Garmon</u> because (1) the Holiday Pay Rule violates employees' Section 7 "right to refrain from" "bargain[ing] collectively through representatives

24

of their own choosing" and (2) the Holiday Pay Rule specifically authorizes non-union employers to violate Section 8(a)(2) of the NLRA by engaging in "negotiations" with a "majority" of their unrepresented employees.

As set forth in detail below, the interpretations of Section 7 and Section 8(a)(1) advanced by Plaintiffs-Appellants are neither "plainly contrary to [the text of Section 7 and Section 8(a)(1)]" nor have they "been authoritatively rejected by the courts or the Board." To the contrary, in one analogous case, the NLRB's General Counsel concluded that a similar state-mandated committee was preempted by federal labor law. See Goody's Family Clothing, Inc., Case 10-CA-26718, 1993 WL 726790, (Div. of Advice Sept. 21, 1993). Accordingly, the District Court erred in dismissing Plaintiffs-Appellants' claim that the Holiday Pay Rule is preempted by the Supreme Court's decision in Garmon.

### A. THE HOLIDAY PAY RULE INFRINGES ON EMPLOYEES' SECTION 7 RIGHT TO "REFRAIN FROM" "BARGAIN[ING] COLLECTIVELY" THROUGH REPRESENTATIVES OF THEIR CHOOSING.

The District Court concluded that the Holiday Pay Rule did not violate employee's Section 7 rights because "the provision does not contemplate bargaining." (APP255, ADD026, R. Doc. 50, at 26.) Section 7 is not so limited.[4]

---

[4] The District Court also suggested that Plaintiffs-Appellants may not have standing to raise employees' rights under Section 7 as a basis for preemption. (APP254, ADD025, R. Doc. 50, at 25.) This is not the law. As the Third Circuit has recognized: "a state or territorial law can be unenforceable as preempted by federal law even when the federal law secures no individual substantive rights for the party

25

Section 7 of the NLRA guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection," as well as "***the right to refrain*** from any or all such activities." 29 U.S.C. § 157 (emphasis added).

The Holiday Pay Rule provides that adjustments to holiday pay may be agreed upon "by a majority of affected nursing home workers":

**Subp. 2. Modification of holiday date and time.**

A.      The start and stop times for the 24-hour period comprising a holiday can be modified by a nursing home employer ***if agreed upon by a majority of affected nursing home workers*** or the exclusive representative of the affected nursing home workers if one exists.

B.      A nursing home employer may substitute up to four holidays for an alternate day in the same calendar year if the substitution is agreed upon ***by a majority of affected nursing home workers*** or the exclusive representative of the affected nursing home workers if one exists. . . .

---

arguing preemption." St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands, 218 F.3d 232, 241-42 (3d Cir. 2000) (citing California Fed. Sav. & Loan Assoc. v. Guerra, 479 U.S. 272 (1987) and Ray v. Atlantic Richfield Co., 435 U.S. 151 (1978)).

4505531.v2

(emphasis added). The Holiday Pay Rule contemplates an ***annual process*** that must occur each year for the following calendar year. The first modification period was in 2024 (for holidays in 2025) and the next period is in 2025 (for holidays in 2026).

The Holiday Pay Rule therefore creates a "representative" – i.e., the "majority of affected nursing home workers" – that is authorized to determine whether all "nursing home workers" are willing to agree to adjustments to the holiday dates and times. Employees who are not part of the "majority" have their Section 7 rights infringed because they have the choice foisted upon them by the representative – i.e., the "majority of affected nursing home workers." The individual employee has not authorized the "majority of affected nursing home workers" to be its exclusive bargaining representative through the representation procedures established by the NLRB.

Under the NLRA, a properly elected union serves as the "exclusive representative[]" of the employees in negotiating the terms and conditions of employment. 29 U.S.C. § 159(a). Specifically, Section 9(a) provides:

> Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment . . . .

Id. The Holiday Pay Rule intrudes on Section 9(a) by designating a pseudo "exclusive representative" – i.e., the "majority of affected nursing home workers" –

to represent "nursing home workers" for the purpose of agreeing to adjustments in holiday pay dates and times.

In addition, whether "affected nursing home workers" is a "unit appropriate for such purposes" is a representational question that must be decided by the NLRB in the first instance. See 29 U.S.C. § 159(b) ("The Board shall decide in each case . . . [what] the unit appropriate for the purposes of collective bargaining shall be. . . ."); see also Couchigian v. Rick, 489 F. Supp. 54 (D. Minn. 1980) ("It is well established that section 9(b) vests in the Board the exclusive jurisdiction to determine the appropriate bargaining unit.").

Here, Section 7 protects the rights of "nursing home workers" to refrain from agreeing to modifications to the holiday pay dates and times based on an agreement that their employer reaches with the "majority of affected nursing home workers."

Importantly, the concern here is not hypothetical. One of Plaintiffs-Appellants' members proposed modifications to the holiday schedule and employees were permitted to "vote" on the outcome. (See APP058-59, R. Doc. 29-1, at 3 ¶ 8 (Brown Decl.); see also APP061-62, R. Doc. 29-1, at 6-7 (Brown Decl.).) The "affected nursing home workers" agreed to the employer's proposal even though employees in the minority did not have a voice in determining whether the majority represented them for purposes of collective bargaining in violation of Section 7. The NLRA authorizes union representation only if the representative has been

"designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes."  29 U.S.C. § 159(a). Accordingly, the Holiday Pay Rule regulates conduct that is "***arguably*** protected or prohibited" by the NLRA and it is therefore preempted by the NLRA under <u>Garmon</u>.

### B. THE HOLIDAY PAY RULE EXPRESSLY AUTHORIZES EMPLOYERS TO VIOLATE SECTION 8(A)(2) OF THE NLRA.

Section 8(a)(2) of the NLRA prohibits any employer (union and non-union) from "dominat[ing] or interfer[ing] with the formation or administration" of a "labor organization."[5]  To determine whether a violation of Section 8(a)(2) has occurred, the NLRB, which is the federal agency responsible for interpreting federal labor law, performs a two-step inquiry.  <u>Electromation, Inc.</u>, 309 NLRB 990 (1992), <u>enfd.</u> 35 F.3d 1148 (7th Cir. 1994).  First, the NLRB considers whether the entity involved is a "labor organization" as defined by the NLRA. Second, the NLRB considers

---

[5] Section 8(a)(2) provides in relevant part:

> It shall be an unfair labor practice for an employer—
>
> . . .
>
> (2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: Provided, That subject to rules and regulations made and published by the Board pursuant to section 6 [section 156 of this title], an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay;

29 U.S.C. § 158(a)(2).

whether the employer has engaged in any of the forms of conduct proscribed by Section 8(a)(2), *i.e.*, domination or interference with the organization's formation or administration, or unlawful support of the organization. In this case, both factors are satisfied.

The District Court dismissed Plaintiffs-Appellants' preemption claim because it concluded that the Holiday Pay Rule did not create a "labor organization" as defined by Section 2(5) of the NLRA. (APP249-250, ADD020-21, R. Doc. 50, at 20-21.)The District Court did not address the "domination or interference" element of a Section 8(a)(2) violation.

### 1. The Holiday Pay Rule Creates a "Labor Organization" as Defined by the NLRA.

The NLRA's definition of labor organization is broad. Section 2(5) does not require labor organizations to have any formal structure:

> The term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate <u>and</u> which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

29 U.S.C. § 152(5). A group of individuals may comprise a labor organization even though it lacks a constitution or bylaws, elected officials, formal meetings, dues, or other formal structure. See <u>S&W Motor Lines, Inc.</u>, 236 NLRB 938, 942 (1978). Under Section 2(5) of the NLRA, a "labor organization" exists if:

(1)     Employees participate,

4505531.v2

(2)     There is a "purpose to deal with [the] employer[],"

(3)     The group "concern[s] itself with conditions of employment or other statutory subjects," and

(4)     There is "evidence that the committee is in some way representing the employees."

Electromation, Inc., 309 NLRB at 996.  Rather than address the four Electromation factors, the District Court dismissed Plaintiffs-Appellants' preemption claim because it concluded that the Holiday Pay Rule did not "create[] or instruct[] an employer to create an 'organization' of any kind . . . in which employees participate" and because it concluded that organization (even if it existed) did not "deal with" nursing home employers."   (APP249-250, ADD020-21, R. Doc. 50, at 20-21.) A proper review of the Electromation factors, particularly given the procedural posture of its case, reveals that Plaintiffs-Appellants have sufficiently alleged that each of the four elements is met in this case.

With respect to the first Electromation factor, employees clearly participate. Indeed, the Holiday Pay Rule makes clear that employees participate in the decision to change "the start and stop times for the 24-hour period comprising a holiday" and to "substitute up to four holidays for an alternate day in the same calendar year." According to guidance from the NHWSB, this can be done in "a meeting with a vote at the end, a survey monkey, a petition in the break room, or any other reasonable

4505531.v2

way for workers to let their voices be heard." Regardless of how the decision is made, employees clearly participate.

In finding that the Holiday Pay Rule did not "create[] or instruct[] an employer to create an 'organization' of any kind . . . in which employees participate," the District Court construed the Holiday Pay Rule without regard to Defendant-Appellee's own guidance, which expressly contemplates that employers and employees can agree to change holiday dates and hours via a "meeting" and "mak[ing] a decision together." (APP010-11, R. Doc. 22, at 10-11.) The District Court also concluded that "the Court has found no support for the proposition that merely asking employees to vote on some limited employment-related matters transforms those employees into a labor organization." (APP251, ADD0222, R. Doc. 50, at 22.)The District Court reasoned: "If that were the case, then a vote among employees about from where to order lunch would transform the workforce into a labor organization." (Id.)

But, the District Court was swinging at the straw man. Garmon preemption is not triggered by employees taking a vote. Preemption is triggered when the state "regulate[s] activity that the NLRA protects, prohibits, or arguably protects or prohibits." Idaho Bldg. & Const. Trades Council, 801 F.3d at 962 (quoting Garmon, 359 U.S. at 245). Thus, if Minnesota passed a law requiring employees to vote on where to order lunch or, more akin to the Holiday Pay Rule, a state law requiring a

4505531.v2

majority of employees to vote in favor of changing where they order lunch from, then this state law would certainly raise a preemption issue under <u>Garmon</u>. Given the procedural posture of this case, there is no basis for summarily dismissing Plaintiffs-Appellants' claim that the Holiday Pay Rule arguably creates a "labor organization" as contemplated by Section 2(5) of the NLRA.

As to the second <u>Electromation</u> factor, the primary purpose of the employee group created by the Holiday Pay Rule is to "***deal with***" their employers regarding holidays and the start and stop times for paid holidays. The term "dealing with" is broader than "collective bargaining" and "applies to situations that do not contemplate the negotiation of a collective-bargaining agreement." <u>Electromation</u>, 309 NLRB at 995; <u>see also</u> <u>NLRB v. Cabot Carbon Co.</u>, 360 U.S. 203, 213 (1959) (holding that an employee group may be a labor organization if it exists even in part to "deal" with the employer, regardless of whether it is engaged in collective bargaining). In this case, the group of "affected nursing home workers" described by the Holiday Pay Rule actually engages in "bargaining" with the employer by responding to the employer's proposals regarding alternative holidays and holiday pay start times and end times. Stated differently, the Holiday Pay Rule authorizes a group of "affected nursing home workers" to accept or reject their employer's proposals regarding up to four alternative paid holidays and holiday pay start and stop times. Guidance published by Defendant-Appellee describes a process for a

33

"meeting," "discuss[ion]," and then "mak[ing] a decision together." (APP010-11, R. Doc. 22, at 10-11.) This is clearly "dealing with" the employer as contemplated by Section 2(5) of the NLRA. See, e.g., Ona Corp., 285 NLRB 400, 405 (1987) (employee action committee made proposals regarding vacations and floating holiday schedules); St. Vincent's Hospital, 244 NLRB 84, 85-86 (2979) (employee committee made proposals on several issues including wages, hours and vacations); Ampex Corp., 168 NLRB 742, 746-47 (1967), enfd. 442 F.2d 82 (7th Cir.1971), cert. denied 404 U.S. 939 (1971) (committee presented suggestions to the employer on behalf of all employees as to subjects pertaining to working conditions).

Further, as noted above, the Holiday Pay Rule envisions that this bilateral process will take place each year: "Any agreement to modify a holiday date or time must be made in the calendar year preceding the start of the calendar year in which the modified holiday is observed." Minn. R. Admin. 5200.2010. As a result, each year, the group of "affected nursing home workers" will negotiate with their employer and either accept or deny their employer's proposals regarding holiday pay. Clearly, the Holiday Pay Rule creates an employee group that "deals with" employers.

In its decision, the District Court summarily concluded that the Holiday Pay Rule "does not require or contemplate 'dealing.'" (APP252, ADD023, R. Doc. 50, at 23.) While the District Court did acknowledge that the Holiday Pay Rule

34

"contemplates *employer*-initiated communications with employees," the District Court refused to consider that this employer-initiated communication would result in bilateral discussions or even proposals. Again, this is contrary to Defendant-Appellee's own guidance regarding how the process will work. Indeed, as noted above, guidance published by Defendant-Appellee describes a process for a "meeting," "discuss[ion]," and then "mak[ing] a decision together**.**" (APP010-11, R. Doc. 22, at 10-11.) It is hard to believe that Plaintiffs-Appellants have not sufficiently alleged a potential Section 8(a)(2) violation where Defendant-Appellee's own guidance sanctions a bilateral process that the District Court found to be lacking.

What is more, Plaintiff-Appellants are not obligated to demonstrate that their construction of the law is ultimately correct. Instead, in cases "involving the potential application of the Act to specific factual situations, the party asserting preemption 'must then put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation." Idaho Bldg. & Const. Trades Council, 801 F.3d at 962 n.10 (quoting Davis, 476 U.S. at 395).

In fact, because these employees are acting in a representative capacity for the other nursing home workers, it is more likely that they will be considered a "labor organization" under the NLRA. For example, in NLRB v. Ampex Corp., 442 F.2d 82 (7th Cir. 1971), the Seventh Circuit concluded that a "Communications

Committee" likened by an employer to a suggestion box, was a "labor organization" under Section 2(5) of the NLRA. The court noted that "[t]here was ample evidence that the committee meetings often involved matters in some of the fields referred to in the statutory definition and resulted in action upon them by management." Id. at 84. Here, too, while the meetings would likely be no more than one time per year, the meetings and discussion would result in action by the employer if more than 50 percent of the nursing home workers voted to adjust the holiday days or hours.

With respect to the third Electromation factor, the group of "affected nursing home workers" deals with their employer on mandatory topics of bargaining. Wages, including any premium pay for working on a holiday and the hours that premium is paid, are mandatory subjects of bargaining. NLRB, GC Memo. No. 93-4, 1993 WL 595235 (April 15, 1993) ("Under Section 2(5), a labor organization includes any organization in which employees participate and which deals with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."). Indeed, under Section 8 of the NLRA, an employer is required to bargain "in good faith with respect to *wages*, *hours*, and other terms and conditions of employment . . . ." 29 U.S.C. § 158(d) (emphasis added).

As to the final Electromation factor, the group created by the Holiday Pay Rule actually represents workers because a majority of the group (i.e., 50 percent

plus one) makes the decision for all other "affected nursing home workers."  For example, if 51 percent of the "affected nursing home workers" desire to substitute one holiday (e.g., Presidents' Day) for another holiday (e.g., Christmas Eve or the day after Thanksgiving), then that decision would bind the other 49 percent of "affected nursing home workers."  For example, a majority of the affected employees at Cassia reached an agreement with their employer to substitute Easter and Christmas Eve for President's Day and Veteran's Day.  (See APP059, R. Doc. 29-1, at 4 ¶ 11 (Brown Decl.); see also APP061-62, R. Doc. 29-1, at 6-7 (Brown Decl.).)  This is the type of "representation" contemplated by the NLRB in its definition of a "labor organization."  See Electromation, Inc., 309 NLRB at 994 ("[I]f the organization has as a purpose the representation of employees, it meets the statutory definition of 'employee representation committee or plan' under Section 2(5) and will constitute a labor organization if it also meets the criteria of employee participation and dealing with conditions of work or other statutory subjects.").

> ### 2. The Holiday Pay Rule Creates Unlawful Domination or Assistance of the "Affected Nursing Home Workers."

Section 8(a)(2) prohibits employer domination or interference with the formation and administration of any labor organization, or the giving of financial or other support to it.  In Electromation, the Board noted that:

> Although Section 8(a)(2) does not define the specific acts that may constitute domination, a labor organization that is the creation of management, whose structure and function are essentially determined

4505531.v2

by management . . . and whose continued existence depends on the fiat of management, is one whose formation or administration has been dominated under Section 8(a)(2). In such an instance, actual domination has been established by virtue of the employer's specific acts of creating the organization itself and determining its structure and function.

309 NLRB at 995-96. The Board added that Section 8(a)(2) does not require a finding of antiunion animus or a specific motive to interfere with Section 7 rights. See, e.g., <u>Keeler Brass Automotive Group</u>, 317 NLRB 1110 (1995) (employer unlawfully dominated grievance committee by creating the committee and determining its structure and function).

Unlawful employer assistance, as opposed to domination, exists when an employer interferes with the formation or administration of a labor organization, but when that organization is not subjugated to the employer's will. For example, in <u>Duquesne University</u>, 198 NLRB 891 (1972), the Board found that the employer unlawfully assisted an employee committee when it paid the employees for time spent working on the committee and provided administrative support.

Here, the Holiday Pay Rule creates a group of "affected nursing home workers" that is inherently dominated and assisted by their employer in violation of Section 8(a)(2). Specifically, the Holiday Pay Rule and guidance issued by Defendant-Appellee provide that the employer can dictate the time and format for making decisions about holiday pay:

4505531.v2

> *Q:*     *I want to switch 4 holidays on the list for other holidays. We are not unionized. How do we determine how to arrive at agreement on this with a majority of affected nursing home workers?*
>
> A:     First determine who in your staff qualify as nursing home workers under the rules. A majority would be fifty percent of those workers plus one. ***Then find a way to discuss and make a decision together.*** This could be ***a meeting with a vote at the end, a survey monkey, a petition in the break room, or any other reasonable way for workers to let their voices be heard***. Just keep in mind that you will need to keep a record of the agreement for a minimum of 3 years after the observation of the modified holiday. That could look like meeting minutes, records of vote numbers and when the vote was held, a copy of the petition or something similar.

(APP010-11, R. Doc. 22, at 10-11 (emphasis added).)

The employer is tasked with scheduling the meeting, outlining the agenda, and recording the decision made by a majority of "affected nursing home workers." This is unlawful domination and assistance as contemplated by the NLRA. See, e.g., Keeler Brass Automotive Group, 317 NLRB 1110 (1995) (employer unlawfully dominated grievance committee by creating the committee and determining its structure and function); Clapper's Manufacturing, 186 NLRB 324, 332–334 (1970), enfd. 458 F.2d 414 (3rd Cir. 1972) (employer suggested the form and structure of the committee, established its purpose, and retained power to determine its composition); Han–Dee Spring & Mfg. Co., 132 NLRB 1542 (1961) (employer organized and determined nature, structure and function of employee grievance committee); Wahlgren Magnetics, 132 NLRB 1613 (1961) (employer initiated and

4505531.v2

sponsored employee representation committee, permitted the use of company time and property for meetings and paid employees while they met with their representatives).

To the extent Defendant-Appellee seeks to justify the Holiday Pay Rule by arguing that it is the creation of state law and therefore cannot be considered a "labor organization" or a violation of Section 8(a)(2), Defendant-Appellee would be wrong. This argument was considered and rejected by the NLRB in Goody's Family Clothing, Inc., Case 10-CA-26718, 1993 WL 726790, (Div. of Advice Sept. 21, 1993).

In Goody's Family Clothing, the NLRB's Division of Advice considered whether a safety committee mandated by state law constituted a "labor organization" that was unlawfully dominated or interfered with the by the employer. The NLRB made clear that the state law was preempted under Garmon and therefore the state law offered no justification for the employer's violation of Section 8(a)(2):

> We reject the Employer's defense to the Section 8(a)(2) and (5) allegations, that the Tennessee law requires it to deal with the Safety Committee concerning mandatory subjects of bargaining, because the state law is preempted by the NLRA.
>
> In Brown v. Hotel Employees, 468 U.S. 491 (1984), the Court held that where a state regulation actually conflicts with the NLRA, i.e., where it either penalizes conduct protected by the Act or permits conduct prohibited by the Act, *the federal law must prevail by operation of the Supremacy Clause of the Constitution*. . . .

4505531.v2

The Tennessee law at issue here directly conflicts with Section 8(a)(2) and (5) of the NLRA. It requires that employers set up safety committees which clearly are "labor organizations" under Section 2(5) of the Act, i.e., they must have employee members and they must "deal with" employers regarding safety issues, which are conditions of employment. Further, the Tennessee law requires that the committees be set up in such a way that they are inevitably dominated by employers within the meaning of Section 8(a)(2)—i.e., employers create the committees, determine their structure and procedures, set their agendas in accordance with the law, pay employees to attend meetings, and even determine which employees will serve on the committees.[] . . . Since the Tennessee law actually conflicts with federal prohibitions under Sections 8(a)(2) and (5) and, indeed, directly undermines the Congressionally-recognized policies supporting these prohibitions,[] it is preempted under Brown . . . .

Id. at 3-4 (footnotes omitted) (emphasis added).

Like the safety committees established by the state in Goody's Family Clothing, the Holiday Pay Rule actually conflicts with federal labor law because it creates a group of "affected nursing home workers" that is unlawfully dominated and assisted by their employer in violation of Section 8(a)(2). Accordingly, the Holiday Pay Rule is clearly preempted by the NLRA.

Lastly, it is important to remember that it is not necessary for the Court to find that the Holiday Pay Rule actually causes employers to violate Section 8(a)(2) in order for Garmon preemption to apply. (See APP059, R. Doc. 29-1, at 4 ¶ 11 (Brown Decl.); see also APP061-62, R. Doc. 29-1, at 6-7 (Brown Decl.).) Instead, the Court need only find that the Holiday Pay Rule authorizes conduct that is "***arguably . . . prohibited***" by the NLRA. Here, the Holiday Pay Rule expressly authorizes

41

employers to create a form of "bargaining" or "meeting" where a majority of employees make a decision for the remaining employees regarding holiday pay and hours. This is akin to "bargaining" as understood by Section 7 of the NLRA and likely causes employers to violate Section 8(a)(2) of the NLRA. As a result, the Holiday Pay Rule is preempted by the Supreme Court's decision in <u>Garmon</u>.

**IV.  THE DISTRICT COURT ERRED IN FINDING THAT PLAINTIFFS-APPELLANTS FAILED TO SUFFICIENTLY ALLEGE THAT THE HOLIDAY PAY RULE IS PREEMPTED UNDER <u>MACHINISTS</u>.**

In <u>Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers v. Wisconsin Employment Relations Comm'n</u>, 427 U.S. 132 (1976), the Supreme Court held that a state may not regulate conduct, even if it is neither protected nor prohibited by the NLRA, that is within the zone of activity that Congress meant to be left to the free play of economic forces.

The NLRA preempts state and local laws regulating activities that Congress intended to be left unregulated and thus subject to the natural "balance of power between labor and management expressed in our national labor policy." <u>Machinists</u>, 427 U.S. at 140, 146. Where Congress intentionally left conduct to "the free play of economic forces," localities may not regulate. <u>Id.</u>; <u>see also</u> <u>Midwest Motor Exp., Inc. v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 120</u>, 512 N.W.2d 881 (Minn. 1994) (finding that Minn. Stat. § 179.12(9) was preempted because it "interferes . . . with the substantive aspects of

the bargaining process by branding as unlawful an economic device Congress intended to be unregulated."); Hines v. Davidowitz, 312 U.S. 52, 67 (1941) (holding that a state or local law is preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"); United Steelworkers of Am. AFL-CIO-CLC v. Johnson, 830 F.2d 924, 929 (8th Cir. 1987) (en banc).

For example, in Thunderbird Mining Co. v. Ventura, 138 F. Supp. 2d 1193, 1196 (D. Minn. 2001), two taconite mining companies challenged portions of the Minnesota Iron Range Resources and Rehabilitation Board's (the "IRRRB") enabling statute. Specifically, the companies argued that Minn. Stat. § 298.227 impermissibly interfered with the collective bargaining process by requiring that certain state funds could be released to the company only if the IRRRB received authorization from a majority of the members of the company's joint committee of labor and management. Under Minn. Stat. § 298.227, employee representatives at union employers were appointed by the local union. According to the companies, "[t]he statute's practical effect . . . has been to provide a 'weapon' to Local Steelworkers Unions for use during collective bargaining with taconite producers." Id.

In finding Minn. Stat. § 298.227 preempted pursuant to Machinists preemption, Judge Rosenbaum reasoned:

4505531.v2

***Minnesota's statutory scheme intrudes into the collective bargaining process.*** The Court finds it does so by granting substantial economic power to the Union, aiding it in wresting concessions from management. "<u>Machinists</u> indicates that the States are not free, entirely and always, directly to enhance the self-help capability of one of the parties to such a dispute so as to result in a significant shift in the balance of bargaining power struck by Congress." <u>New York Telephone Co. v. New York State Dept. of Labor</u>, 440 U.S. 519, 548–49 (1979) (Blackmun, J., concurring).

***Minn. Stat. § 298.227 improperly shifts the carefully crafted "balance of bargaining power struck by Congress."*** That the shift is indirect is irrelevant: A state may not accomplish indirectly what it is forbidden to accomplish directly. Under the federal labor law's broad preemptive scope, "the State has no authority to introduce its own standard of 'properly balanced bargaining power,'" whether the introduction of that standard occurs explicitly or implicitly. See <u>United Steelworkers v. St. Gabriel's Hosp.</u>, 871 F. Supp. 335 (D. Minn. 1994).

The Court, of course, recognizes that federal preemption still affords states a degree of power to regulate aspects of the relationship between labor and management. ***But it cannot seriously be argued that § 298.227 falls within the sort of general regulation permitted under the NLRA.*** . . . Minnesota's statute—involving, as it does, a cash-dollar impact, rather than a business or community regulating regime—does more than simply alter the backdrop against which negotiations take place; it alters the very negotiating process itself. This is an impermissible intrusion into the field of federal labor law.

Although § 298.227's impact is more subtle than the statute at issue in <u>Employers Association, Inc. v. United Steelworkers</u>, 32 F.3d 1297 (8th Cir. 1994), its result is the same: "The statute permanently and substantially shifts the terms of bargaining in favor of the union . . . '[it] has materially altered the Congressionally defined equilibrium which exists between management and organized labor in collective bargaining negotiations.'" <u>Id.</u> at 1299 (citation omitted). Such a mechanism is forbidden under federal law.

<u>Id.</u> at 1199-200 (emphasis added).

4505531.v2

Likewise, in <u>Chamber of Commerce v. Bragdon</u>, 64 F.3d 497 (9th Cir. 1995), the Ninth Circuit held that <u>Machinists</u> preemption was applicable to a county ordinance that applied "prevailing wage" requirements to non-governmental construction projects within the county. The Ninth Circuit reasoned that the <u>Machinists</u> principle (that the collective bargaining process should be controlled by the free play of economic forces) "can be frustrated by the imposition of substantive requirements," and that some substantive requirements could "virtually dictate the results of the contract." <u>Id.</u> at 501. The court concluded that the ordinance was preempted under this reasoning because it did not merely require a "general" minimum wage for such projects, but imposed detailed wage and benefit requirements for a variety of crafts. <u>Id.</u> at 502-04; <u>see also</u> <u>520 S. Mich. Ave. Assocs., Ltd. v. Shannon</u>, 549 F.3d 1119, 1127, 1129-30 (7th Cir. 2008) (holding that state law was preempted because it applied "to one occupation, in one industry, in one county" and was not a "a true 'minimum' labor standard").

Here, like the state laws at issue in <u>Bragdon</u> and <u>Thunderbird Mining</u>, the Holiday Pay Rule is preempted because it improperly shifts the carefully crafted "balance of bargaining power struck by Congress." The District Court acknowledged that "there is no caselaw directly on point," but then the District Court concluded that <u>Bragdon</u> and <u>Thunderbird Mining</u> were inapplicable because the court found that the Holiday Pay Rule was a "minimum labor standard" as described

45

by the Supreme Court in <u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724 (1985) and <u>Fort Halifax Packing Co., Inc. v. Coyne</u>, 482 U.S. 1 (1987). (APP261-269, ADD032-40, R. Doc. 50, at 32-40.) Contrary to the District Court's finding, the Holiday Pay Rule is not a "minimum state labor standard."

*First*, the "minimum labor standards" at issue in <u>Metropolitan Life</u> and <u>Fort Halifax</u> applied to ***all*** employers in the state. The Holiday Pay Rule applies to one subset of workers who perform work in a specific area of most long-term care campuses. Thus, the Holiday Pay Rule is not "indistinguishable" for the state mandated severance payments for all employers in <u>Fort Halifax</u> and the minimum insurance benefit law in <u>Metropolitan Life</u>. The Holiday Pay Rule is more akin to the preempted statutes at issue in <u>Bragdon</u> and <u>520 S. Mich. Ave.</u> because it applies "to one occupation, in one industry, in one county" and was not a "a true 'minimum' labor standard."

*Second*, the Holiday Pay Rule provides specifically when the holiday pay wage must be paid and how the employer and the union can negotiate changes in the hours of the holiday and change up to four holiday dates. This micro-management cannot be viewed as setting forth a minimum labor standard. For example, in <u>520 South Michigan Avenue Associates v. Shannon</u>, 549 F.3d 1119 (7th Cir. 2008), the Seventh Circuit held that a law "is not a law of general application" if it "applies to one occupation, in one industry, in one county." <u>Id.</u> at 1139. As noted above, the

46

Holiday Pay Rule applies to one class of workers – i.e., "nursing home workers" – who perform work in a "nursing home" and does not apply to other workers in Hybrid Facilities simply because the worker performs their work in a different portion of the campus or facility. Likewise, in <u>Bragdon</u>, the Ninth Circuit held that a law "which is not of general application, but targets particular workers in a particular industry . . . affects the bargaining process in a way that is incompatible with the general goals of the NLRA." Minimum labor standards include such things as minimum wages, <u>American Hotel & Lodging Association v. City of Los Angeles</u>, 834 F.3d 958, 963 (9th Cir. 2016), minimum insurance benefits, <u>MetLife Ins.</u>, 471 U.S. at 727, or one-time severance payments, <u>Fort Halifax</u>, 482 U.S. at 23, generally leaving decisions about how to negotiate or operationalize these requirements to the businesses and companies. The Holiday Pay Rule does not "merely provide the backdrop for negotiations" as minimum labor standards do. <u>American Hotel & Lodging Association v. City of Los Angeles</u>, 834 F.3d 958, 963 (9th Cir. 2016) (quotation marks omitted). By prescribing the manner and means by which employers and unions can agree to the holiday hours and dates, the Holiday Pay Rule interferes with the entire process of collective bargaining. And, by creating the possibility of penalties against an employer for any infraction, it would be absurd to describe the Holiday Pay Rule as merely "set[ting] the stage for [collective] bargaining." <u>Id.</u> at 964.

47

*Third*, in addition to administrative enforcement by Defendant-Appellee, the Holiday Pay Rule is enforced via a private right of action in derogation of the grievance and arbitration procedures which are set forth in most (if not all) collective bargaining agreements to resolve workplace disputes. See Minn. Stat. § 181.217. As the Seventh Circuit noted in 520 South Michigan Avenue Associates v. Shannon, 549 F.3d 1119 (7th Cir. 2008), by virtue of its provision for a private right of action, the Illinois statute held to be preempted "encourag[es] litigation rather than resolution through the mechanism established by the CBA."[6] Here, the Minnesota statute upon which the Holiday Pay Rule is based authorizes class actions and provides damages for an aggrieved employee in "the full amount of the wages, benefits, and overtime compensation, less any amount the nursing home employer is able to establish was actually paid to each nursing home worker, and for an additional equal amount as liquidated damages." See Minn. Stat. § 181.217, subd. 3. Nursing home workers are also entitled to seek civil penalty of up to $10,000 for each violation for each employee, reasonable costs, witness fees, and attorneys' fees. Id.; see also Minn. Stat. § 177.27, subd. 7. The draconian nature of the Holiday Pay Rule is further underscored by the fact that the Holiday Pay Rule does not allow a

---

[6] In fact, in 520 S. Mich. Ave., the district court similarly granted the defendant's motion to dismiss. On appeal, the Seventh Circuit reversed, finding that the state law was preempted by Machinists.

4505531.v2

party to opt out of its "formidable enforcement scheme," <u>Chamber of Commerce v. Brown</u>, 554 U.S. 60, 63 (2008) – unlike other statutes that have been upheld as minimum labor standards. <u>Compare</u> <u>American Hotel</u>, 834 F.3d at 965; <u>Associated Builders & Contractors v. Nunn</u>, 356 F.3d 979, 982 (9th Cir. 2004) ("Participation in the regulatory scheme is entirely voluntary.").

*Fourth*, the structure of the NHWSB itself is strikingly similar to multi-employer bargaining, which is unlawful under the NLRA unless all of the participating employers are signatory to CBAs with the individual union and the employees are represented by the union. Specifically, the NHWSB includes "three members who represent nursing home employers or employer organizations" and "three members who represent nursing home workers or worker organizations." Minn. Stat. § 181.212, subd. 1. It is true that the NHWSB also includes the commissioners of human services, health, and labor and industry (or their designees), but this does little to cloak what would otherwise be considered unlawful collective bargaining between representatives from employers and labor unions who do not represent the workers at issue. This is a unique aspect of the Holiday Pay Rule that is not seen in any of the cases cited by the District Court.

Make no mistake: nothing about the Holiday Pay Rule is "neutral." <u>Machinists</u>, 427 U.S. at 156 & n.* (Powell, J., concurring). To the contrary, it openly "reflect[s] an accommodation of the special interests" of the union, <u>id.</u>, and thus "is

49

more properly characterized as an example of an interest group deal in public-interest clothing," Bragdon, 64 F.3d at 503 (quotation marks omitted). This has the impact of reducing the incentive for parties to engage in collective bargaining and, instead, "redirect efforts of employees not to bargain with employers, but instead, to seek to set minimum wage and benefit packages with political bodies." Id. at 504. Accordingly, it is preempted by federal labor law.

For all of the foregoing reasons, the Holiday Pay Rule impermissibly intrudes upon and interferes with the collective bargaining process as envisioned by Congress for the determination of the terms and conditions of employment for employees in the nursing home industry. The Holiday Pay Rule is therefore preempted by federal labor law and, as a result, it violates the Supremacy Clause of the U.S. Constitution.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant LeadingAge Minnesota and Plaintiff-Appellant Care Providers of Minnesota respectfully request that this Court reverse the District Court's Order and Judgment and remand to the District Court with instructions to consider Plaintiffs-Appellants' Motion for a Preliminary Injunction.

4505531.v2

Dated: August 22, 2025          **FELHABER LARSON**

By:    */s/ Grant T. Collins*
        Grant T. Collins, MN #390654
        Brandon J. Wheeler, MN #396336
        220 South Sixth Street, Suite 2200
        Minneapolis, MN 55402-4504
        Telephone: (612) 339-6321
        Facsimile: (612) 338-0535
        gcollins@felhaber.com
        bwheeler@felhaber.com

**ATTORNEYS FOR PLAINTIFF-APPELLANT LEADINGAGE MINNESOTA AND PLAINTIFF-APPELLANT CARE PROVIDERS OF MINNESOTA**

51

# <u>CERTIFICATES OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 11,534 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      The undersigned certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Office Word 2010 in 14-point Times New Roman type.

Dated: August 22, 2025       **FELHABER LARSON**

By:    */s/ Grant T. Collins*
        Grant T. Collins, MN #390654
        Brandon J. Wheeler, MN #396336
        220 South Sixth Street, Suite 2200
        Minneapolis, MN 55402-4504
        Telephone: (612) 339-6321
        Facsimile: (612) 338-0535
        gcollins@felhaber.com
        bwheeler@felhaber.com

        **ATTORNEYS FOR PLAINTIFF-APPELLANT LEADINGAGE MINNESOTA AND PLAINTIFF-APPELLANT CARE PROVIDERS OF MINNESOTA**

4505531.v2

<h1 style="text-align:center"><u>8TH CIR. R. 28A(H) CERTIFICATION</u></h1>

The undersigned hereby certifies that I have filed electronically, pursuant to 8th Cir. R. 28A(h), a version of Appellant's Brief in PDF format. I hereby certify that the file has been scanned for viruses and that it is virus-free.

Dated: August 22, 2025      **FELHABER LARSON**

By:    */s/ Grant T. Collins*
      Grant T. Collins, MN #390654
      Brandon J. Wheeler, MN #396336
      220 South Sixth Street, Suite 2200
      Minneapolis, MN 55402-4504
      Telephone: (612) 339-6321
      Facsimile: (612) 338-0535
      gcollins@felhaber.com
      bwheeler@felhaber.com

**ATTORNEYS FOR PLAINTIFF-APPELLANT LEADINGAGE MINNESOTA AND PLAINTIFF-APPELLANT CARE PROVIDERS OF MINNESOTA**

<h1 style="text-align:center"><u>CERTIFICATE OF SERVICE</u></h1>

I hereby certify that on August 22, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

Dated: August 22, 2025 **FELHABER LARSON**

By: */s/ Grant T. Collins*
Grant T. Collins, MN #390654
Brandon J. Wheeler, MN #396336
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
Telephone: (612) 339-6321
Facsimile: (612) 338-0535
gcollins@felhaber.com
bwheeler@felhaber.com

**ATTORNEYS FOR PLAINTIFF-APPELLANT LEADINGAGE MINNESOTA AND PLAINTIFF-APPELLANT CARE PROVIDERS OF MINNESOTA**

4505531.v2