## *United States Court of Appeals*
### *for the Eighth Circuit*

——————————

No. 25-2252

——————————

LeadingAge Minnesota and
Care Providers of Minnesota

*Appellants*

v.

Nicole Blissenbach

*Appellee*

———————————————

## BRIEF OF <u>AMICI</u> <u>CURIAE</u> IN SUPPORT OF APPELLEE
## AND AFFIRMANCE OF THE DISTRICT COURT

———————————————

Justin D. Cummins, #276248
Cummins & Cummins, LLP
920 Second Avenue South
Suite 1245
Minneapolis, MN 55402
612.465.0108

**Attorneys for**
**<u>Amici</u> <u>Curiae</u>**

# **TABLE OF CONTENTS**

I. Amici Curiae's Interest In This Case Is Public In Nature, And Amici's Arguments On Behalf Of The Many Thousands Of Employees Directly Affected By The Legislation And Administrative Rule At Issue Here Fully Support Appellee And The Affirmance Of The District Court ........................1

II. The Minnesota Holiday Pay And Flexibility Rule Reasonably Implements The Compelling Public Policy Codified By Minnesota To Establish Adequate Nursing Home Employment Standards In Minnesota ....................2

III. Garmon Preemption Does Not Apply To The Minnesota Rule Because The Conduct In Question Is Not Even Arguably Protected Or Prohibited By The NLRA..............................................................................................................4

    A. The Minnesota Rule Does Not Concern Or Implicate Conduct Arguably Or Actually Protected By Section 7 Of The NLRA .............5

    B. The Minnesota Rule Does Not Concern Or Implicate Conduct Arguably Or Actually Prohibited By Section 8 Of The NLRA............6

IV. Conclusion .................................................................................................8

# TABLE OF AUTHORITIES

**Cases**

Ampex Corp., 168 NLRB 742 (1967) ......................................................................7

E.I. du Pont de Nemours & Co., 311 NLRB 893 (1999)........................................7

Gen. Foods Corp., 231 NLRB 1232 (1977).............................................................7

Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Local 174,
598 U.S. 771 (2023).........................................................................................4,5,7

Int'l Longhoremen's Ass'n v. Davis, 476 U.S. 380 (1986)......................................4

LeadingAge Minn. v. Blissenbach, 2025 WL 1489376 (D. Minn. 2025).................6

Ona Corp., 285 NLRB 400 (1987)........................................................................6,7

St. Vincent's Hospital, 244 NLRB 84 (1979)........................................................6,7

Vons Grocery Co., 320 NLRB 53 (1995)..................................................................5

**Statutes**

29 U.S.C. §§ 151, et seq.............................................................................................1

Minn. Stat. §§ 181.211, et seq. ..................................................................................2

Minn. Stat. § 181.213(a) ..........................................................................................2,3

**Rules**

Minn. Admin. R. 5200.2010 ......................................................................................2

Minn. Admin. R. 5200.2010, Subps. 1-2................................................................2,3

Minn. Admin. R. 5200.2010, Subp. 2.....................................................................2,5

**I.** **<u>Amici</u> <u>Curiae</u>'s Interest In This Case Is Public In Nature, And <u>Amici's</u> Arguments On Behalf Of The Many Thousands Of Employees Directly Affected By The Legislation And Administrative Rule At Issue Here Fully Support Appellee And The Affirmance Of The District Court**

Pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, the related precedent, the submissions to the Court, and the proceedings herein, Minnesota AFL-CIO, SEIU Healthcare Minnesota and Iowa, Minnesota Nurses Association, AFSCME, Council 5, AFSCME, Council 65, UFCW, Local 663, UFCW, Local 1189, Teamsters, Local 638, and IAM, District 5 submit this Brief of <u>Amici</u> <u>Curiae</u>. Pursuant to FRAP 29(a)(4), <u>Amici</u> <u>Curiae</u> counsel certifies that no one other than <u>Amici</u> <u>Curiae</u> paid for the preparation of the Brief of <u>Amici</u> <u>Curiae</u>, in whole or in part, and no one other than <u>Amici</u> <u>Curiae</u> counsel authored the Brief, in whole or in part.

<u>Amici</u> <u>Curiae</u>'s interest is public in nature because <u>Amici</u> <u>Curiae</u> collectively represent several hundred thousand employees – including nursing home workers covered by the legislation and related administrative rule at issue in this case. Accordingly, <u>Amici</u> <u>Curiae</u> provide highly relevant analysis from the perspective of the people directly affected by the administrative rule being challenged: nursing home workers. As explained below, the administrative rule at issue is both important and necessary and <u>Garmon</u> preemption under the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, <u>et</u> <u>seq.</u>, does not apply to the relevant rule.

1

**II.**  **The Minnesota Holiday Pay And Flexibility Rule Reasonably Implements The Compelling Public Policy Codified By Minnesota To Establish Adequate Nursing Home Employment Standards In Minnesota**

In 2023, Minnesota enacted a law codifying the Minnesota Nursing Home Workforce Standards Board ("Minnesota Board") as an entity within the Minnesota Department of Labor and Industry.  See generally Minn. Stat. §§ 181.211, et seq.  In this context, Minnesota directed the Minnesota Board to adopt "rules establishing minimum nursing home employment standards" in Minnesota.  See Minn. Stat. § 181.213(a).

Based on its statutory mandate, the Minnesota Board promulgated a Minnesota holiday pay and flexibility rule ("Minnesota Rule") consistent with Minnesota's rule-making procedure.  See Minn. Admin. R. 5200.2010.  The holiday pay provision of the Minnesota Rule requires Minnesota nursing home employers to pay Minnesota nursing home workers the rate of time-and-one-half the workers' regular hourly wage for the time worked during a holiday, as defined by the Minnesota Rule.  Id., Subp. 1.  The flexibility provision of the Minnesota Rule enables Minnesota nursing home employers, if a majority of their nursing home workers support it, to replace up to four holidays designated under the Minnesota Rule with other days in the same year and, moreover, to change the 24-hour period that constitutes a given holiday.  Id., Subp. 2.  Significantly, Minnesota

nursing home employers insisted on inclusion of the flexibility provision in the Minnesota Rule.

Both the holiday pay provision and the flexibility provision of the Minnesota Rule advance Minnesota's important public policy of securing a nursing home workforce that provides prompt and high-quality care to Minnesotans. See Minn. Admin. R. 5200.2010, Subps. 1-2. Before the founding of the Minnesota Board, Minnesota nursing homes suffered substantial turnover among nursing home workers that materially undermined the ability to provide prompt and high-quality care to all residents.

The central cause of the staffing challenges and resulting resident care issues in Minnesota nursing homes that compelled the promulgation of the Minnesota Rule is both obvious and preventable. Before adoption of the Minnesota Rule, Minnesota nursing home workers consistently worked long hours while receiving egregiously low wages, especially when considering the essential and highly demanding work they perform daily for Minnesotans. To rectify these exploitive conditions and unsustainable circumstances, the Minnesota Board promulgated the Minnesota Rule and related measures as part of "establishing minimum nursing home employment standards" in Minnesota. See Minn. Stat. § 181.213(a). By establishing new minimum standards, the Minnesota Rule is a vital first step to help stabilize Minnesota's nursing home industry consistent with Minnesota's

public policy of securing safe nursing homes for all Minnesotans. In that regard, no nursing homes have closed since the Minnesota Board promulgated the Minnesota Rule while multiple nursing homes closed each year for the past quarter century. See, e.g., Minnesota Department of Labor and Industry August 7, 2025 Meeting Minutes, No. 4, https://www.dli.mn.gov/sites/default/files/pdf/nhwsb_waivers_variances_minutes_080725.pdf.

## III. Garmon Preemption Does Not Apply To The Minnesota Rule Because The Conduct In Question Is Not Even Arguably Protected Or Prohibited By The NLRA

Garmon preemption applies when Section 7 of the NLRA at least arguably protects the conduct at issue or Section 8 of the NLRA at least arguably prohibits the conduct in question. See, e.g., Int'l Longhoremen's Ass'n v. Davis, 476 U.S. 380, 394-95 (1986). As discussed below, Garmon preemption does not apply to the Minnesota Rule because Appellants lack "enough evidence to enable the court to find that the [National Labor Relations Board] reasonably could uphold a claim. . . ." Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Local 174, 598 U.S. 771, 776 (2023) (citing Supreme Court precedent). In short, accepting Appellants' allegations as true and viewing the pleadings in the light most favorable to Appellants still yield no valid claim in this case.

**A. The Minnesota Rule Does Not Concern Or Implicate Conduct Arguably Or Actually Protected By Section 7 Of The NLRA**

Contrary to Appellants' allegation, the flexibility provision of the Minnesota Rule does not require nursing home workers to engage in collective bargaining or otherwise to deal with Appellants under the NLRA. The Minnesota Rule merely authorizes nursing home employers to propose a one-time change to up to four holidays per year recognized by the Minnesota Rule with other days in the same year and/or to change the 24-hour period of a holiday in the coming year. See Minn. Admin. R. 5200.2010, Subp. 2. The nursing home workers can either accept or reject a nursing home employer's proposal; the Minnesota Rule does not enable the workers to make any counter offer or other arrangement.

In other words, the potential change allowed by the Minnesota Rule does not involve the requisite bilateral mechanism of bargaining by which an employer and a union of the employees choosing participate in a pattern and practice of making proposals and counterproposals over time regarding core employment terms and conditions; stated differently, the Minnesota Rule does not even contemplate – much less authorize – nursing home workers to bargain or otherwise deal with Appellants for purposes of the NLRA. See, e.g., Vons Grocery Co., 320 NLRB 53, 54 (1995) (rejecting the assertion by the National Labor Relations Board General Counsel ("NLRB GC") that the employer dealt with employees because "[o]ne incident of making proposals on conditions of work does not constitute a

5

pattern or practice of dealing with the employer within the meaning of [the NLRA].”); see also Glacier, 598 U.S. at 776.

Appellants’ arguments based on the flexibility provision of the Minnesota Rule are ironic in addition to being erroneous. During the requisite rule-making procedure here, Minnesota nursing home employers like Appellants proposed and then insisted on the addition of the flexibility provision to the Minnesota Rule. Consequently, Appellants’ arguments turn on the notion that the Minnesota Rule features an illegal provision because of Minnesota nursing home employers’ advocacy. Appellants’ position is absurd and unsupported by the governing law.

**B.      The Minnesota Rule Does Not Concern Or Implicate Conduct Arguably Or Actually Prohibited By Section 8 Of The NLRA**

For the same reasons that the Minnesota Rule does not entail conduct arguably or actually protected by Section 7 of the NLRA, the Rule does not involve conduct arguably or actually prohibited by Section 8 of the NLRA. As analyzed above in Part III.A, a one-time decision about whether to replace existing holidays with other days or to change the 24-hour period for a holiday is not collective bargaining or even dealing as defined by the NLRA.

Appellants also erroneously argue that the Minnesota Rule creates an illegal company union because the Rule supposedly allows Appellants to dominate the voting process discussed above regarding holidays. Appellants’ argument defies logic. As the District Court explained when correctly dismissing Appellants’

6

baseless case, adopting Appellants' position would mean that "a vote among employees about from where to order lunch would transform the workforce into a [company union]." LeadingAge Minn. v. Blissenbach, 2025 WL 1489376, *9 (D. Minn. 2025).

Tellingly, and unlike this case, the precedent on which Appellants rely involved entities that met regularly with the employers to negotiate about employee-initiated proposals concerning key employment terms and conditions. See, e.g., Ona Corp., 285 NLRB 400, 405 (1987); St. Vincent's Hospital, 244 NLRB 84, 85-86 (1979); Ampex Corp., 168 NLRB 742, 746 (1967). Appellants' case is plainly distinguishable because it merely involves a one-time decision concerning the potential substitution of current holidays with other days and the possible change to the 24-hour period for a holiday.

In sum, the Minnesota Rule – by authorizing a one-time decision about holidays – simply does not require or even permit Appellants to create a company union in violation of Section 8 of the NLRA. E.I. du Pont de Nemours & Co., 311 NLRB 893, 896-97 (1999) (rejecting the NLRB GC's arguments and ruling that the employer's regular safety conferences with employees did not create a labor organization that could be a company union); Gen. Foods Corp., 231 NLRB 1232, 1234-35 (1977) (rejecting the NLRB GC's arguments and determining that groups of employees who regularly met with the employer about employment terms and

conditions were not a labor organization that could be a company union); see also

Glacier, 598 U.S. at 776.

## IV. Conclusion

The Minnesota Rule responsibly implements the public policy codified by Minnesota to ensure that the increasing number of nursing home residents in Minnesota receive adequate nursing home care. To this end, the Minnesota Rule helps to remedy the chronic underpayment of, and unduly burdensome schedules for, Minnesota nursing home workers that has contributed substantially to the staffing crisis impeding prompt and high-quality care for all nursing home residents in Minnesota. More to the point, the Minnesota Rule in no way implicates Section 7 or Section 8 of the NLRA, much less involves conduct that the NLRA at least arguably protects or prohibits. For the foregoing reasons, Amici Curiae respectfully request that the Eighth Circuit affirms the District Court decision in this case.

Dated:  October 1, 2025        **CUMMINS & CUMMINS, LLP**

*/s/Justin D. Cummins*
Justin D. Cummins, #276248 (MN)
920 Second Avenue South
Suite 1245
Minneapolis, MN 55402
612.465.0108
justin@cummins-law.com

**ATTORNEYS FOR
AMICI CURIAE**

## CERTIFICATION OF COMPLIANCE WITH FRAP 32(g)(1)

I hereby certify that the content of the Brief herein contains 1,995 words. I also certify that the Brief herein otherwise fully complies with all requirements of FRAP 32 because, _inter alia_, the Brief has been prepared in a proportionally spaced typeface in 14-point Times New Roman font using Microsoft Word for Microsoft 365 MSO (Version 2406).

Dated:  October 1, 2025        **CUMMINS & CUMMINS, LLP**


_/s/Justin D. Cummins_
Justin D. Cummins, #276248
920 Second Avenue South
Suite 1245
Minneapolis, MN 55402
612.465.0108
justin@cummins-law.com

**ATTORNEYS FOR**
**AMICI CURIAE**

# CERTIFICATION OF COMPLIANCE WITH 8TH CIR. R. 28A

I hereby certify that I filed electronically a version of the Brief herein in portable document format. I also certify that the file has been scanned for viruses and that the file is virus free.

Dated: October 1, 2025                    **CUMMINS & CUMMINS, LLP**


*/s/Justin D. Cummins*
Justin D. Cummins, #276248
920 Second Avenue South
Suite 1245
Minneapolis, MN 55402
612.465.0108
justin@cummins-law.com

**ATTORNEYS FOR**
**AMICI CURIAE**

# CERTIFICATION OF SERVICE

I hereby certify that I electronically filed and served the Motion and related Brief herein by using the CM/ECF system administered by the Clerk of Court for the United States Court of Appeals for the Eighth Circuit.

Dated:  October 1, 2025                    **CUMMINS & CUMMINS, LLP**


*/s/Justin D. Cummins*
Justin D. Cummins, #276248
920 Second Avenue South
Suite 1245
Minneapolis, MN 55402
612.465.0108
justin@cummins-law.com

**ATTORNEYS FOR
AMICI CURIAE**