# United States Court of Appeals
# for the Eighth Circuit

_____

**LeadingAge Minnesota and Care Providers of Minnesota,**

**Plaintiffs-Appellants,**

**vs.**

**Nicole Blissenbach,** *in her official capacity as Commissioner of the Minnesota Department of Labor and Industry,*

**Defendant-Appellee.**

_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA
_____

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS
_____

FELHABER LARSON
Grant T. Collins, MN # 390654
Brandon J. Wheeler, MN #396336
220 South Sixth Street, Suite 2200
Minneapolis, Minnesota 55402
Telephone: (612) 339-6321
gcollins@felhaber.com
bwheeler@felhaber.com
*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES .............................................................. iv

INTRODUCTION ..............................................................................1

ARGUMENT ......................................................................................3

I.    APPELLANTS HAVE SUFFICIENTLY ALLEGED THAT THE HOLIDAY PAY RULE IS PREEMPTED UNDER GARMON. .....................................................3

    A.    The Holiday Pay Rule Infringes on Employees' Section 7 Right to "Refrain from" "Bargain[ing] Collectively" through Representatives of Their Choosing. .......................................5

    B.    The Holiday Pay Rule Authorizes Employers to Violate Section 8(a)(2) of the NLRA. ...............................................................7

        1.    The Holiday Pay Rule Creates a "Labor Organization" as Defined by the NLRA. ...............................................8

        2.    The Holiday Pay Rule Creates Unlawful Domination or Assistance of the "Affected Nursing Home Workers." ...............9

    C.    Appellee Misinterprets and Misapplies Garmon. ............11

II.    THE DISTRICT COURT ERRED IN FINDING THAT APPELLANTS FAILED TO SUFFICIENTLY ALLEGE THAT THE HOLIDAY PAY RULE IS PREEMPTED UNDER MACHINISTS. ....................................................12

    A.    The Holiday Pay Rule is Not a "Minimum Labor Standard" as Defined by Metropolitan Life and Fort Halifax. .................13

    B.    The Holiday Pay Rule is More Akin to the Targeted Legislation Found to Be Preempted in Bragdon, Shannon, and Thunderbird Mining. ...............................................................................20

CONCLUSION ................................................................................26

CERTIFICATES OF COMPLIANCE ............................................27

8TH CIR. R. 28A(H) CERTIFICATION .......................................28

4552937.v2

<u>CERTIFICATE OF SERVICE</u> ...........................................................................29

4552937.v2

# TABLE OF AUTHORITIES

## Cases

520 South Michigan Avenue Associates v. Shannon,
  549 F.3d 1119 (7th Cir. 2008).................................................................... passim

Action Electric, Inc. v. Local 292, IBEW,
  856 F.2d 1062 (8th Cir. 1988)....................................................................19

American Hotel & Lodging Association v. City of Los Angeles,
  834 F.3d 958 (9th Cir. 2016)................................................................ 15, 16, 18

Associated Builders & Contractors v. Nunn,
  356 F.3d 979 (9th Cir. 2004).....................................................................18

Belknap, Inc. v. Hale,
  463 U.S. 491 (1983) ....................................................................................3

Brown v. Hotel Employees,
  468 U.S. 491 (1984) ....................................................................................9

Chamber of Commerce v. Bragdon,
  64 F.3d 497 (9th Cir. 1995)................................................................ passim

Chamber of Commerce v. Brown,
  554 U.S. 60 (2008) ....................................................................................18

Couchigian v. Rick,
  489 F. Supp. 54 (D. Minn. 1980) ................................................................6

E.I. du Pont de Nemours & Co.,
  311 NLRB 893 (1993)..................................................................................8

Electromation, Inc.,
  309 NLRB 990 (1992)..............................................................................8, 9

Employers Association, Inc. v. United Steelworkers,
  32 F.3d 1297 (8th Cir. 1994)....................................................................24

Fort Halifax Packing Co., Inc. v. Coyne,
  482 U.S. 1 (1987) ................................................................................ passim

Golden State Transit Corp. v. Los Angeles,
  475 U.S. 608 (1986) ..................................................................................20

Goody's Family Clothing, Inc.,
  Case 10-CA-26718, 1993 WL 726790 (NLRB Gen. Counsel Advice Sept.
  21, 1993)................................................................................................ 9, 10

iv

Hines v. Davidowitz,
312 U.S. 52 (1941) ..................................................................................12

Idaho Bldg. & Const. Trades Council v. Inland Pac. Chapter of Associated
Builders & Contractors,
801 F.3d 950 (9th Cir. 2015) .....................................................................4

Int'l Longshoremen's Ass'n, v. Davis,
476 U.S. 380 (1986) ......................................................................... 3, 4, 9, 11

Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers v. Wisconsin
Employment Relations Comm'n,
427 U.S. 132 (1976) ................................................................... passim

Marine Eng'rs v. Interlake S.S. Co.,
370 U.S. 173 (1962) ..................................................................................4

Metropolitan Life Ins. Co. v. Massachusetts,
471 U.S. 724 (1985) ................................................................... passim

Midwest Motor Exp., Inc. v. International Broth. of Teamsters, Chauffeurs,
Warehousemen and Helpers of America, Local 120,
512 N.W.2d 881 (Minn. 1994) ...............................................................12

New York Telephone Co. v. New York State Dept. of Labor,
440 U.S. 519 (1979) ................................................................................23

NLRB v. Cabot Carbon Co.,
360 U.S. 203 (1959) ..............................................................................8, 9

San Diego Building Trades Council v. Garmon,
359 U.S. 236 (1959) ................................................................... passim

Thunderbird Mining Co. v. Ventura,
138 F. Supp. 2d 1193 (D. Minn. 2001) ............................... 2, 20, 22, 25

United Steelworkers of Am. AFL-CIO-CLC v. Johnson,
830 F.2d 924 (8th Cir. 1987) ..................................................................13

United Steelworkers v. St. Gabriel's Hosp.,
871 F. Supp. 335 (D. Minn. 1994) ..........................................................23

Wis. Dept. of Industry v. Gould Inc.,
475 U.S. 282 (1986) ..................................................................................3

**Statutes**

29 U.S.C. § 152 ............................................................................................6, 8

29 U.S.C. § 157 ...............................................................................................5

29 U.S.C. § 158.................................................................................................7

29 U.S.C. § 159............................................................................................5, 6

Minn. Stat. § 177.27........................................................................................18

Minn. Stat. § 179.12........................................................................................12

Minn. Stat. § 181.211......................................................................................15

Minn. Stat. § 181.212......................................................................................19

Minn. Stat. § 181.213.................................................................................17, 21

Minn. Stat. § 181.217.......................................................................17, 18, 22, 24

Minn. Stat. § 298.227......................................................................................23

**Rules**

Minn. Admin. R. 5200.2010 .......................................................................5, 9, 22

4552937.v2

# **INTRODUCTION**

Appellee defends the Holiday Pay Rule as nothing more than a neutral "minimum labor standard." It is not. The Holiday Pay Rule is preempted by the National Labor Relations Act ("NLRA") because (1) it authorizes activity that is arguably prohibited by Section 7 and Section 8(a)(2) of the NLRA (known as "Garmon preemption") and (2) it regulates conduct Congress intended to leave unregulated (known as "Machinists preemption").

*First*, under San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), the Holiday Pay Rule is preempted because the rule authorizes conduct that is "arguably" prohibited by the NLRA. By requiring employers to secure collective assent from a "majority" of employees (if no union exists), the Holiday Pay Rule creates a collective – i.e., the "majority of affected nursing home workers" – that determines whether to agree to adjustments to the holiday dates and times. Employees who are not part of the "majority" have their Section 7 rights infringed because the individual employee has a decision foisted upon them by the "majority" that the individual employee has not authorized to be the employee's exclusive bargaining representative through the representation procedures established by the National Labor Relations Board (NLRB). In fact, the collective created by the Holiday Pay Rule – i.e., the "majority of affected nursing home workers" – may include "supervisors" who are statutorily excluded from the definition of

1

"employee" and other workers who do not constitute an appropriate bargaining unit as defined by the NLRB pursuant to Section 9 of the NLRA.

*Second*, under <u>Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers v. Wisconsin Employment Relations Comm'n</u>, 427 U.S. 132 (1976), the Holiday Pay Rule is preempted because it regulates conduct that is within the zone of activity that Congress meant to be left to the free play of economic forces. Contrary to Appellee's claim, the Holiday Pay Rule is not akin to the "minimum labor standards" upheld by the Supreme Court in <u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724 (1985) and <u>Fort Halifax Packing Co., Inc. v. Coyne</u>, 482 U.S. 1 (1987). Instead, the Holiday Pay Rule is more analogous to the targeted legislation found to be preempted by the Ninth Circuit in <u>Chamber of Commerce v. Bragdon</u>, 64 F.3d 497 (9th Cir. 1995), by the Seventh Circuit in <u>520 South Michigan Avenue Associates v. Shannon</u>, 549 F.3d 1119 (7th Cir. 2008), and by the District of Minnesota in <u>Thunderbird Mining Co. v. Ventura</u>, 138 F. Supp. 2d 1193, 1196 (D. Minn. 2001).

Accordingly, this Court should reverse the District Court's Order and Judgment and remand with instructions to consider Appellants' Motion for a Preliminary Injunction.

4552937.v2

**ARGUMENT**

**I.     APPELLANTS HAVE SUFFICIENTLY ALLEGED THAT THE HOLIDAY PAY RULE IS PREEMPTED UNDER GARMON.**

Appellee agrees that <u>Garmon</u> "preemption prevents states from regulating activity that is ***arguably*** protected or prohibited by the NLRA." (Appellee's Br. at 21 (quoting <u>Wis. Dept. of Industry v. Gould Inc.</u>, 475 U.S. 282, 286 (1986).) Thus, the key question for this Court is whether the Holiday Pay Rule authorizes (or prohibits) conduct that is "***arguably*** protected or prohibited" by the NLRA.[1] <u>Int'l Longshoremen's Ass'n, v. Davis</u>, 476 U.S. 380, 394-95 (1986) ("[T]he pre-emption inquiry is whether the conduct at issue was arguably protected or prohibited by the NLRA.").

Rather than applying the "***arguably*** protected or prohibited" standard, Appellee argues (at length) that the Holiday Pay Rule does not "***mandate***" that employers (including Appellants' members) violate the NLRA.[2] (<u>See, e.g.</u>, Appellee's Br. 8 ("[The Holiday Pay Rule] does . . . not ***mandate*** conduct that is arguably protected or prohibited by the NLRA.").) That is ***<u>not</u>*** the standard. The

---

[1] Without cititation, Appellee claims that "<u>Garmon</u> preemption does not apply to any regulation that touches on minimum labor standards." (Appellee's Br. at 21.) This is not the law. The concept of a "minimum labor standard" is relevant only to <u>Machinists</u> preemption – not <u>Garmon</u> preemption.

[2] Appellee does not claim that the Holiday Pay Rule is exempted from <u>Garmon</u> preemption under either of the exemptions set forth in <u>Belknap, Inc. v. Hale</u>, 463 U.S. 491, 498 (1983).

4552937.v2

standard is whether the state regulation ***authorizes*** (or prohibits) conduct that is "***arguably*** protected or prohibited" by the NLRA. Courts have made clear that "[t]his is ***not*** a demanding standard." Idaho Bldg. & Const. Trades Council v. Inland Pac. Chapter of Associated Builders & Contractors, 801 F.3d 950, 965 (9th Cir. 2015) (emphasis added).

To succeed in its claim for Garmon preemption, Appellants must (1) "advance an interpretation of the [NLRA] that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the [NLRB]" and (2) offer "enough evidence to enable the court to find that the [NLRB] reasonably could uphold a claim based on such an interpretation." Davis, 476 U.S. at 394-95 (quoting Marine Eng'rs v. Interlake S.S. Co., 370 U.S. 173, 184 (1962)).

At the initial pleading stage, Appellants have met this modest threshold twice over. Specifically, Appellants have sufficiently alleged that the Holiday Pay Rule is preempted under Garmon because (1) the Holiday Pay Rule violates employees' Section 7 "right to refrain from" "bargain[ing] collectively through representatives of their own choosing" and (2) the Holiday Pay Rule specifically authorizes non-union employers to violate Section 8(a)(2) of the NLRA by engaging in "negotiations" with a "majority" of their unrepresented employees.

4

**A. THE HOLIDAY PAY RULE INFRINGES ON EMPLOYEES' SECTION 7 RIGHT TO "REFRAIN FROM" "BARGAIN[ING] COLLECTIVELY" THROUGH REPRESENTATIVES OF THEIR CHOOSING.**

Section 7 guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities," as well as "the right to *refrain* from any or all such activities." 29 U.S.C. § 157 (emphasis added).

By its terms, the Holiday Pay Rule provides that any adjustments to holiday pay dates or hours may be implemented *only if* "agreed upon by a majority of affected nursing home workers" (or by the "exclusive representative of the affected nursing home workers if one exists"). Minn. Admin. R. 5200.2010, subpt. 2(A), (B). Appellee appears to acknowledge the Holiday Pay Rule's annual cadence – that is, that any change must be decided in the preceding calendar year for the year ahead – makes the compelled collective process recurring by design. Id., subpt. 2(C).

This structure forces employees into collective decision-making outside the NLRA's representational framework. Nonconsenting employees are bound by a "majority" that they did not authorize to act as their representative through the NLRA's Section 9 procedures. See 29 U.S.C. § 159(a), (b) (exclusive representation exists only when "designated or selected . . . by the majority of the employees in a unit appropriate for such purposes" and unit questions are determined by the Board). At the same time, the "nursing home employer" is hamstrung by the pseudo

5

"majority" because it cannot adjust the holiday dates or hours without the pseudo-majority's imprimatur.

In addition, whether "affected nursing home workers" constitute an "appropriate" bargaining unit is itself a representational question that must be decided by the NLRB in the first instance. See 29 U.S.C. § 159(b) ("The Board shall decide in each case . . . [what] the unit appropriate for the purposes of collective bargaining shall be. . . ."); see also Couchigian v. Rick, 489 F. Supp. 54 (D. Minn. 1980) ("It is well established that section 9(b) vests in the Board the exclusive jurisdiction to determine the appropriate bargaining unit."). In fact, the group of "affected nursing home workers" may include "supervisors" as defined by Section 2(11) of the NLRA who are specifically excluded from the definition of "employees" who can be included in an appropriate bargaining unit. Specifically, Section 2(3) of the NLRA specifically excludes "any individual employed as a supervisor" from the definition of "employee." 29 U.S.C. § 152(3), (11).

The Holiday Pay Rule bypasses those statutory safeguards by imposing a "majority-rules" apparatus for decisions concerning the dates and hours of holiday pay.

Record evidence confirms this danger. One of Appellant's members proposed alternative holidays and non-union employees "voted" on the outcome; a majority approved changing which dates would carry premium pay, thereby binding

4552937.v2

dissenting employees who never selected any representative.[3]  (See APP058-59, R. Doc. 29-1, at 3 ¶ 8 (Brown Decl.); see also APP061-62, R. Doc. 29-1, at 6-7 (Brown Decl.).)  That is, the Holiday Pay Rule effectuated collective representation over working conditions without resort to the NLRA's exclusive representation framework – at least "arguably" intruding on Section 7 rights, including the right to refrain.

As you can see, Appellants have sufficiently alleged that the Holiday Pay Rule regulates conduct that is "***arguably*** protected or prohibited" by the NLRA.  As a result, the Court should reverse the District Court's Order and Judgment and remand with instructions to consider Appellants' Motion for a Preliminary Injunction.

### B. THE HOLIDAY PAY RULE AUTHORIZES EMPLOYERS TO VIOLATE SECTION 8(A)(2) OF THE NLRA.

Section 8(a)(2) prohibits any employer (union and non-union) from dominating, interfering with, or supporting "any labor organization." 29 U.S.C. § 158(a)(2). The NLRA defines "labor organization" broadly to include "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or

---

[3] This record evidence is "embraced" by Paragraph 43 of Appellant's Amended Complaint (APP001-16, R. Doc. 22 at 11 ("The Rule authorizes quasi-collective bargaining with a 'majority' of 'affected nursing home workers' in violation of Section 7 and Section 8(a)(2) of the NLRA.").)

7

in part, of dealing with employers" about "wages, rates of pay, hours of employment, or conditions of work."  29 U.S.C. § 152(5).

### 1. The Holiday Pay Rule Creates a "Labor Organization" as Defined by the NLRA.

The Board and Supreme Court have repeatedly held that employer-facilitated employee committees or bodies that engage management over terms and conditions are "labor organizations," and employer sponsorship risks a violation of Section 8(a)(2).  See NLRB v. Cabot Carbon Co., 360 U.S. 203, 212-15 (1959) (employer-created committees addressing working conditions were "labor organizations" and employer support violated Section 8(a)(2)); Electromation, Inc., 309 NLRB 990, 995-1005 (1992) (employee "action committees" discussing attendance and wages were labor organizations; employer involvement violated Section 8(a)(2)); E.I. du Pont de Nemours & Co., 311 NLRB 893, 894 (1993) (defining "dealing" as a bilateral mechanism involving employee proposals and employer responses; a pattern or practice suffices). The Holiday Pay Rule's compelled mechanism – that is, securing up-or-down collective approval regarding changes to holiday dates or hours – fits that "dealing" concept.  Cabot Carbon, 360 U.S. at 211-12 (noting that "dealing with" is broader than "bargain with").  While a change to the holiday dates and hours is not compelled by law, the process is mandatory for any non-union employer that wishes to modify the holiday dates and hours.  And, once utilized, the process is both bilateral and likely to reoccur.

4552937.v2

Appellee's attempt to recast the process as "only a one-time vote" is incompatible with the text. The Holiday Pay Rule contemplates that any substitutions of up to four holidays, or any adjustment to the 24-hour holiday pay period, must be decided in the year prior, implying an annual cycle of employer proposals and a "majority" response. See Minn. R. 5200.2010, subpt. 2(A)-(D). Even if this interaction were episodic, the question under Garmon is not whether the Board would ultimately find a violation, but whether it reasonably could. Davis, 476 U.S. at 394-95.

### 2. The Holiday Pay Rule Creates Unlawful Domination or Assistance of the "Affected Nursing Home Workers."

The Holiday Pay Rule and the state's own guidance contemplate that the employer will administer the method and timing of the collective assent process (e.g., a meeting with a vote at the end, a survey, a petition, etc.). This is precisely the sort of involvement the Board has treated as unlawful domination or support. See Cabot Carbon, 360 U.S. at 212-15 (employer committees); Electromation, 309 NLRB at 995-1005 (employer-sponsored "action committees"); Goody's Family Clothing, Inc., Case 10-CA-26718, 1993 WL 726790, at *2-3 (NLRB Gen. Counsel Advice Sept. 21, 1993) ("Since the Tennessee law actually conflicts with federal prohibitions under Sections 8(a)(2) and (5) [of the NLRA] and, indeed, directly undermines the Congressionally-recognized policies supporting these prohibitions,[] it is preempted under [Brown v. Hotel Employees, 468 U.S. 491 (1984)], and there

9

is no need to engage in a <u>Garmon</u> balancing of state and local interests." (footnote ommited)). That some employers may not seek to change holiday dates or hours does not defeat <u>Garmon</u> preemption; the question is whether the Holiday Pay Rule authorizes conduct the Board could find prohibited. <u>Garmon</u>, 359 U.S. at 244-46; <u>Goody's Family Clothing</u>, 1993 WL 726790, at *6 ("[T]he Tennessee law directly interferes with the collective-bargaining process established under the NLRA, conflicts with the clear meaning and purpose of Section 8(a)(2) and (5), and is incompatible with the goals of the NLRA.").

Finally, it is important to remember that it is not necessary for the Court to find that the Holiday Pay Rule actually causes employers to violate Section 8(a)(2) in order for <u>Garmon</u> preemption to apply. (<u>See</u> APP059, R. Doc. 29-1, at 4 ¶ 11 (Brown Decl.); <u>see also</u> APP061-62, R. Doc. 29-1, at 6-7 (Brown Decl.).) Instead, the Court need only find that the Holiday Pay Rule authorizes conduct that is "***<u>arguably</u> . . . prohibited***" by the NLRA. Here, the Holiday Pay Rule expressly authorizes employers to create a form of "bargaining" or "meeting" where a majority of "nursing home workers" decides on behalf of all "nursing home workers" regarding holiday pay dates and hours. This is akin to "bargaining" as understood by Section 7 of the NLRA and likely causes employers to violate Section 8(a)(2) of the NLRA. As a result, the Holiday Pay Rule is preempted by the Supreme Court's decision in <u>Garmon</u>.

4552937.v2

### C.  APPELLEE MISINTERPRETS AND MISAPPLIES <u>GARMON</u>.

Appellee repeatedly reframes the issue as whether the Holiday Pay Rule "requires" or "mandates" that employers violate the NLRA.  (Appellee's Br. 8, 28, 30.)  That is not the standard.  The question is whether the Holiday Pay Rule authorizes (or prohibits) conduct that is "***arguably*** protected or prohibited" by the NLRA.  <u>Garmon</u>, 359 U.S. at 244-46; <u>Davis</u>, 476 U.S. at 394-95.  Because the text and operation of the Holiday Pay Rule fall within the ambit of the NLRA, Appellants have sufficiently alleged that the Holiday Pay Rule regulates conduct that is "***arguably*** protected or prohibited" by the NLRA.

Contrary to any claim by Appellee and Amici, Appellants' position does ***not*** mean that "a vote among employees about where to order lunch would transform the workforce into a [company union]."  <u>LeadingAge Minnesota v. Blissenbach</u>, 2025 WL 1489376, at *9, ___ F.Supp.3d ____ (D. Minn. May 23, 2025).  Unlike the case at bar, the hypothetical "lunch vote" is not compelled by state law, state law does not mandate that a majority of certain employees agree to the change, and state law does not force the employer, under the threat of administrative enforcement or civil litigation, to maintain accurate records regarding the vote and for the vote to occure in the prior calendar year.  Under these circumstances, which are the circumstances faced by Appellants' members, the activity authorized by the Holiday Pay Rule

11

certainly constitutes "dealing with" and may even constitute "bargaining with" as defined by the NLRA.

As a result, the Court should reverse the District Court's Order and Judgment and remand with instructions to consider Appellants' Motion for a Preliminary Injunction.

**II.    THE DISTRICT COURT ERRED IN FINDING THAT APPELLANTS FAILED TO SUFFICIENTLY ALLEGE THAT THE HOLIDAY PAY RULE IS PREEMPTED UNDER MACHINISTS.**

In Lodge 76, Int'l Ass'n of Machinists and Aerospace Workers v. Wisconsin Employment Relations Comm'n, 427 U.S. 132 (1976), the Supreme Court held the NLRA preempts state and local laws regulating activities that Congress intended to be left unregulated and thus subject to the natural "balance of power between labor and management expressed in our national labor policy." Id. at 140, 146. Where Congress intentionally left conduct to "the free play of economic forces," localities may not regulate.  Id.; see also Midwest Motor Exp., Inc. v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 120, 512 N.W.2d 881 (Minn. 1994) (finding that Minn. Stat. § 179.12 (9) was preempted because it "interferes . . . with the substantive aspects of the bargaining process by branding as unlawful an economic device Congress intended to be unregulated."); Hines v. Davidowitz, 312 U.S. 52, 67 (1941) (holding that a state or local law is preempted if it "stands as an obstacle to the accomplishment and execution of the

12

full purposes and objectives of Congress"); <u>United Steelworkers of Am. AFL-CIO-CLC v. Johnson</u>, 830 F.2d 924, 929 (8th Cir. 1987) (en banc).

**A.  THE HOLIDAY PAY RULE IS NOT A "MINIMUM LABOR STANDARD" AS DEFINED BY <u>METROPOLITAN LIFE</u> AND <u>FORT HALIFAX</u>.**

Appellee claims that the Holiday Pay Rule is not preempted under <u>Machinists</u> because it is a "minimum labor standard" as described by the Supreme Court in <u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724 (1985) and <u>Fort Halifax Packing Co., Inc. v. Coyne</u>, 482 U.S. 1 (1987).  (Appellee's Br. at 8-20.)  Appellee's reliance on <u>Metropolitan Life</u> and <u>Fort Halifax</u> is misplaced.  Those cases upheld generally applicable state laws (or at least a state law that applied to employers with at least 100 employees) that neither encouraged nor discouraged collective bargaining.

Minimum labor standards must "affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA." <u>Metropolitan Life</u>, 471 U.S. at 755.  Permissible minimum labor standards do not "have any but the most indirect effect on the right of self-organization."  <u>Id.</u>; <u>Shannon</u>, 549 F.3d at 1127, 1129-30.  In contrast, requirements that frustrate the "objective of allowing the bargaining process 'to be controlled by the free-play of economic forces'" are preempted.  <u>Bragdon</u>, 64 F.3d at 501; <u>see also</u> <u>Shannon</u>, 549 F.3d at 1136-37 (substantive requirements are not "minimum labor standards" if they are "incompatible with the goals of the NLRA"—

13

i.e., if they lead to unequal bargaining power by, for example, shifting burdens of proof or requiring new tribunals for disputes). The Holiday Pay Rule is not a minimum labor standard for three reasons.

*First*, the Holiday Pay Rule is not generally applicable. In <u>Metropolitan Life</u>, Massachusetts had enacted a statute that required all general health insurance policies or employee health-care plans that covered hospital and surgical expenses to also include minimum mental health-care benefits. Likewise, in <u>Fort Halifax</u>, the Supreme Court upheld as a state law requiring a one-time severance payment to employees upon the closing of a plant that employed over 100 workers. Here, in contrast, the Holiday Pay Rule applies to one subset of workers who perform work in a specific area of most long-term care campuses. Thus, contrary to Appellee's claim, the Holiday Pay Rule is not "indistinguishable" for the state mandated severance payments for all employers with 100 or more employees in <u>Fort Halifax</u> and the minimum insurance benefit law in <u>Metropolitan Life</u>. (<u>See</u> Appellee's Br. 12.)

Laws that target workers within a particular industry are unlikely to constitute minimum labor standards. <u>See</u> <u>Shannon</u>, 549 F.3d at 1139 (concluding that a law "is not a law of general application" because it "applies to one occupation, in one industry, in one county"). A law "which is not of general application, but targets particular workers in a particular industry . . . affects the bargaining process in a way

4552937.v2

that is incompatible with the general goals of the NLRA." <u>Bragdon</u>, 64 F.3d at 504. Even if underinclusive laws apply to union and non-union employees equally on their face, such "narrow application equates more to a benefit for a bargaining unit than an individual protection." <u>Shannon</u>, 549 F.3d at 1133.

In <u>Shannon</u>, the Seventh Circuit held that a law "is not a law of general application" if it "applies to one occupation, in one industry, in one county." <u>Id.</u> at 1139. As noted above, the Holiday Pay Rule applies to ***one class of workers*** – i.e., "nursing home workers" – who perform work in a "nursing home." Minn. Stat. § 181.211, subd. 9. "Nursing home" is defined to mean "a nursing home licensed under chapter 144A and reimbursed under chapter 256R, or a boarding care home licensed under sections 144.50 to 144.56 and reimbursed under chapter 256R." <u>Id.</u> § 181.211, subd. 9 (as amended by 2025 Minn. Laws ch. 6, art. 5 § 7). Thus, for example, an employee working in a "non-nursing home" facility, such as an assisted living facility, an independent living facility, or even an adjoining hospital is not a covered a "nursing home worker" – at least as long as they do not perform work "in" a "nursing home" as defined by state law.

Minimum labor standards include such things as minimum wages, <u>American Hotel & Lodging Association v. City of Los Angeles</u>, 834 F.3d 958, 963 (9th Cir. 2016), minimum insurance benefits, <u>Metropolitan Life</u>, 471 U.S. at 727, or one-time severance payments, <u>Fort Halifax</u>, 482 U.S. at 23, generally leaving decisions about

15

how to negotiate or operationalize these requirements to the businesses and companies. The Holiday Pay Rule does not "merely provide the backdrop for negotiations" as minimum labor standards do. American Hotel & Lodging Association v. City of Los Angeles, 834 F.3d 958, 963 (9th Cir. 2016) (quotation marks omitted). By prescribing the manner and means by which employers and unions can agree to the holiday hours and dates, the Holiday Pay Rule interferes with the entire process of collective bargaining. And, by creating the possibility of penalties against an employer for any infraction, it would be absurd to describe the Holiday Pay Rule as merely "set[ting] the stage for [collective] bargaining." Id. at 964.

*Second*, the Holiday Pay Rule provides specifically when the holiday pay wage must be paid and how the employer and the union can negotiate changes in the hours of the holiday and change up to four holiday dates. As the Seventh Circuit explained: "The more stringent a state labor substantive standard, the more likely it is that the state law interferes with the bargaining process." Shannon, 549 F.3d at 1136. This micro-management cannot be viewed as setting forth a minimum labor standard.

In fact, under the relevant statutory scheme, the Nursing Home Workforce Standards Board ("NHWSB") developed the Holiday Pay Rule (and all other "employment standards") by reviewing "signed collective bargaining agreements

4552937.v2

applicable to nursing home workers in the relevant geographic area and nursing home occupations."  See Minn. Stat. § 181.213, subd. 2.  In <u>Chamber of Commerce v. Bragdon</u>, 64 F.3d 497 (9th Cir. 1995), the Ninth Circuit held that <u>Machinists</u> preempted an ordinance which "targets particular workers in a particular industry and is developed and revised from the bargaining of others, affects the bargaining process in a way that is incompatible with the general goals of the NLRA."  <u>Bragdon</u>, 64 F.3d at 504.  Like the ordinance in <u>Bragdon</u>, the Holiday Pay Rule is not a "minimum labor standard" but instead represents "targeted legislation" that was "developed and revised from the bargaining of others."  As a result, the Holiday Pay Rule is "incompatible with the general goals of the NLRA" and therefore preempted by the Supreme Court's decision in <u>Machinists</u>.

*Third*, in addition to administrative enforcement by Appellee, the Holiday Pay Rule is enforced via a private right of action in derogation of the grievance and arbitration procedures which are set forth in most (if not all) collective bargaining agreements to resolve workplace disputes.  <u>See</u> Minn. Stat. § 181.217.  In fact, the statute specifically nullifies any "agreement between a nursing home employer and nursing home worker or labor union that fails to meet the minimum standards and requirements in sections 181.211 to 181.217 or established by the board . . . ."  <u>Id.</u> § 181.217, subd. 3.  As the Seventh Circuit noted in <u>Shannon</u>, by virtue of its provision for a private right of action, the Illinois statute held to be preempted

17

"encourag[es] litigation rather than resolution through the mechanism established by the CBA." Here, the Minnesota statute upon which the Holiday Pay Rule is based authorizes class actions and provides damages for an aggrieved employee in "the full amount of the wages, benefits, and overtime compensation, less any amount the nursing home employer is able to establish was actually paid to each nursing home worker, and for an additional equal amount as liquidated damages." See Minn. Stat. § 181.217, subd. 3. Nursing home workers are also entitled to seek civil penalty of up to $10,000 for each violation for each employee, reasonable costs, witness fees, and attorneys' fees. Id.; see also Minn. Stat. § 177.27, subd. 7. The draconian nature of the Holiday Pay Rule is further underscored by the fact that the Holiday Pay Rule does not allow a party to opt out of its "formidable enforcement scheme," Chamber of Commerce v. Brown, 554 U.S. 60, 63 (2008) – unlike other statutes that have been upheld as minimum labor standards. Compare American Hotel, 834 F.3d at 965; Associated Builders & Contractors v. Nunn, 356 F.3d 979, 982 (9th Cir. 2004) ("Participation in the regulatory scheme is entirely voluntary.").

*Finally*, the structure of the NHWSB itself is strikingly similar to multi-employer bargaining, which is unlawful under the NLRA unless all of the participating employers are signatory to CBAs with the individual union and the employees are represented by the union. Likewise, each employer and each union must voluntarily consent to multi-employer bargaining. As this Court has

18

4552937.v2

recognized, "multi-employer bargaining rests on the reality of the consent of the union and of each employer . . . ." Action Electric, Inc. v. Local 292, IBEW, 856 F.2d 1062 (8th Cir. 1988) (quotation omitted). Here, the NHWSB includes "three members who represent nursing home employers or employer organizations" and "three members who represent nursing home workers or worker organizations." Minn. Stat. § 181.212, subd. 1. It is true that the NHWSB also includes the commissioners of human services, health, and labor and industry (or their designees), but this does little to cloak what would otherwise be considered unlawful collective bargaining between representatives from employers and labor unions who do not represent the workers at issue. This is a unique aspect of the Holiday Pay Rule that is not seen in any of the cases cited by the District Court.

Make no mistake: nothing about the Holiday Pay Rule is "neutral." Machinists, 427 U.S. at 156 & n.* (Powell, J., concurring). To the contrary, it openly "reflect[s] an accommodation of the special interests" of the union, id., and thus "is more properly characterized as an example of an interest group deal in public-interest clothing," Bragdon, 64 F.3d at 503 (quotation marks omitted). This has the impact of reducing the incentive for parties to engage in collective bargaining and, instead, "redirect efforts of employees not to bargain with employers, but instead, to seek to set minimum wage and benefit packages with political bodies." Id. at 504. Accordingly, it is preempted by federal labor law.

4552937.v2

**B.** **THE HOLIDAY PAY RULE IS MORE AKIN TO THE TARGETED LEGISLATION FOUND TO BE PREEMPTED IN BRAGDON, SHANNON, AND THUNDERBIRD MINING.**

The essential question in this case is whether the Holiday Pay Rule is incompatible with the goals of the NLRA. The Supreme Court has clearly held that state legislation, which interferes with the economic forces that labor or management can employ in reaching agreements, is pre-empted by the NLRA because of its interference with the bargaining process. See, e.g., Machinists, 427 U.S. 132; Golden State Transit Corp. v. Los Angeles, 475 U.S. 608, 619 (1986) ("Even though agreement is sometimes impossible, government may not step in and become a party to the negotiations.").

There are three reasons why the Holiday Pay Rule is more akin to the preempted statutes at issue in Bragdon, Shannon, and Thunderbird than the laws at issue in Metropolitan Life and Fort Halifax.

*First*, the Holiday Pay Rule is preempted because, like the legislation at issue in Bragdon and Shannon, the Holiday Pay Rule was developed from the bargaining of others. In Bragdon, the Ninth Circuit held that Machinists preempted an Ordinance which "targets particular workers in a particular industry and is developed and revised from the bargaining of others, affects the bargaining process in a way that is incompatible with the general goals of the NLRA." Bragdon, 64 F.3d at 504. Here, the NHWSB developed the Holiday Pay Rule, in part, by reviewing "signed

20

collective bargaining agreements applicable to nursing home workers in the relevant geographic area and nursing home occupations." See Minn. Stat. § 181.213, subd. 2. Thus, like the ordinance in Bragdon, the Holiday Pay Rule was "developed and revised from the bargaining of others." As a result, the Holiday Pay Rule is "incompatible with the general goals of the NLRA" and therefore preempted by the Supreme Court's decision in Machinists.

*Second*, the Holiday Pay Rule does not include an "opt-out" for parties to a collective bargaining agreement. In Fort Halifax, the Supreme Court upheld the severance pay law, in part, because the law allowed parties to a collective bargaining agreement to reach their own arrangements on the issues. 482 U.S. at 22. As the Court explained, "[t]he fact that the parties are free to devise their own severance pay arrangements . . . strengthens the case that the statute works no intrusion on collective bargaining [because the State] has sought to balance the desirability of a particular substantive labor standard against the right of self-determination regarding the terms and conditions of employment." Id. Likewise, in Shannon, the Seventh Circuit highlighted this very language, distinguishing between such a law from the amendment there, under which the parties to a collective bargaining agreement "[we]re not free to devise their own arrangement," thereby "intrud[ing] on the collective bargaining process." 549 F.3d at 1134. And the court held that this was particularly problematic because the One Day Rest in Seven Act that the law at issue

21

amended did allow for such bargaining. Id. Here, parties to a collective bargaining agreement are not free to design their own holiday pay provisions. In fact, the law specifically provides that "[a]n agreement between a nursing home employer and . . . labor union that fails to meet the minimum standards and requirements in sections 181.211 to 181.217 or established by the [NHWSB] is not a defense . . . ." Minn. Stat. § 181.217, subd. 3(c). Instead, unions and employers are limited to changing only four of the holiday dates and any agreement over changes to the dates and the 24-hour period must take place in the prior calendar year. See Minn. Admin. R. 5200.2010, subpt. 2 (A), (B).

*Third*, by statute, the NHWSB includes three union officers who negotiated at least some of the labor contracts reviewed by the NHWSB in developing the Holiday Pay Rule: (1) Jamie Gulley, President of SEIU Healthcare Minnesota, (2) Michele Fredrickson, USW Staff Representative District 11, and (3) Michelle Armstrong, Vice President of UFCW Local 1189. While the NHWSB also includes three members "who represent nursing home employers or employer organizations," the Board's structure permits union officials to unduly influence collective bargaining and collective bargaining agreements similar to the state law struck down in Thunderbird Mining Co. v. Ventura, 138 F. Supp. 2d 1193, 1196 (D. Minn. 2001).

In Thunderbird Mining Co. v. Ventura, 138 F. Supp. 2d 1193, 1196 (D. Minn. 2001), two taconite mining companies challenged portions of the Minnesota Iron

4552937.v2

Range Resources and Rehabilitation Board's (the "IRRRB") enabling statute. Specifically, the companies argued that Minn. Stat. § 298.227 impermissibly interfered with the collective bargaining process by requiring that certain state funds could be released to the company only if the IRRRB received authorization from a majority of the members of the company's joint committee of labor and management. Under Minn. Stat. § 298.227, employee representatives at union employers were appointed by the local union. According to the companies, "[t]he statute's practical effect . . . has been to provide a 'weapon' to Local Steelworkers Unions for use during collective bargaining with taconite producers." Id.

In finding Minn. Stat. § 298.227 preempted pursuant to <u>Machinists</u> preemption, Judge Rosenbaum reasoned:

> ***Minnesota's statutory scheme intrudes into the collective bargaining process.*** The Court finds it does so by granting substantial economic power to the Union, aiding it in wresting concessions from management. "<u>Machinists</u> indicates that the States are not free, entirely and always, directly to enhance the self-help capability of one of the parties to such a dispute so as to result in a significant shift in the balance of bargaining power struck by Congress." <u>New York Telephone Co. v. New York State Dept. of Labor</u>, 440 U.S. 519, 548–49 (1979) (Blackmun, J., concurring).
>
> ***Minn. Stat. § 298.227 improperly shifts the carefully crafted "balance of bargaining power struck by Congress."*** That the shift is indirect is irrelevant: A state may not accomplish indirectly what it is forbidden to accomplish directly. Under the federal labor law's broad preemptive scope, "the State has no authority to introduce its own standard of 'properly balanced bargaining power,'" whether the introduction of that standard occurs explicitly or implicitly. <u>See United Steelworkers v. St. Gabriel's Hosp.</u>, 871 F. Supp. 335 (D. Minn. 1994).

23

> The Court, of course, recognizes that federal preemption still affords states a degree of power to regulate aspects of the relationship between labor and management. ***But it cannot seriously be argued that § 298.227 falls within the sort of general regulation permitted under the NLRA***. . . . Minnesota's statute—involving, as it does, a cash-dollar impact, rather than a business or community regulating regime—does more than simply alter the backdrop against which negotiations take place; it alters the very negotiating process itself. This is an impermissible intrusion into the field of federal labor law.
>
> Although § 298.227's impact is more subtle than the statute at issue in <u>Employers Association, Inc. v. United Steelworkers</u>, 32 F.3d 1297 (8th Cir. 1994), its result is the same: "The statute permanently and substantially shifts the terms of bargaining in favor of the union . . . '[it] has materially altered the Congressionally defined equilibrium which exists between management and organized labor in collective bargaining negotiations.'" <u>Id.</u> at 1299 (citation omitted). Such a mechanism is forbidden under federal law.

<u>Id.</u> at 1199-200 (emphasis added).

Here, the NHWSB interferes with the collective bargaining process for both union and non-union employers. With respect to unionized workforces, the statute specifically nullifies any "agreement between a nursing home employer and . . . labor union that fails to meet the minimum standards and requirements in sections 181.211 to 181.217 or established by the board . . . ." <u>Id.</u> § 181.217, subd. 3. Thus, this provision would invalidate a provision of a collective bargaining agreement between a nursing home employer and a union regarding a change in the holiday dates and times if the parties' agreement did not occur "in the calendar year preceding the start of the calendar year in which the modified holiday is observed."

24

For a non-union workforce, the Holiday Pay Rule operates to discourage collective bargaining because, by passing a statute with such a narrow focus, "there seems to be a disincentive to collective bargaining and instead encouragement for employers or unions to focus on lobbying at the state capital instead of negotiating at the bargaining table." Shannon, 549 F.3d at 1132-33 (quotation and footnote ommitted); see also Metropolitan Life, 471 U.S. at 755 (to avoid preemption, the law must "neither encourage nor discourage the collective-bargaining process that are the subject of the NLRA."). Like the prevailing wage statute at issue in Bragdon, the Holiday Pay Rule's narrow application equates more to a benefit for a bargaining unit than an individual protection. In Bragdon, the Ninth Circuit held that Machinists preempted an Ordinance which "targets particular workers in a particular industry and is developed and revised from the bargaining of others, affects the bargaining process in a way that is incompatible with the general goals of the NLRA." Bragdon, 64 F.3d at 504; see also Shannon, 549 F.3d at 1127, 1129-30 (holding that state law was preempted because it applied "to one occupation, in one industry, in one county").

Here, like the state laws at issue in Bragdon, Shannon, and Thunderbird Mining, the Holiday Pay Rule is preempted because it improperly shifts the carefully crafted "balance of bargaining power struck by Congress."

4552937.v2

For all of the foregoing reasons, the Holiday Pay Rule impermissibly intrudes upon and interferes with the collective bargaining process as envisioned by Congress for the determination of the terms and conditions of employment for employees in the nursing home industry.  The Holiday Pay Rule is therefore preempted by federal labor law and, as a result, it violates the Supremacy Clause of the U.S. Constitution.

## CONCLUSION

For the foregoing reasons, Appellant LeadingAge Minnesota and Appellant Care Providers of Minnesota respectfully request that this Court reverse the District Court's Order and Judgment and remand to the District Court with instructions to consider Appellants' Motion for a Preliminary Injunction.

Dated: November 10, 2025

**FELHABER LARSON**

By: */s/ Grant T. Collins*
Grant T. Collins, MN #390654
Brandon J. Wheeler, MN #396336
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
Telephone: (612) 339-6321
Facsimile: (612) 338-0535
gcollins@felhaber.com
bwheeler@felhaber.com

**ATTORNEYS FOR PLAINTIFF-APPELLANT LEADINGAGE MINNESOTA AND PLAINTIFF-APPELLANT CARE PROVIDERS OF MINNESOTA**

26

## <u>CERTIFICATES OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Rule 32(c) of the Federal Rules of Appellate Procedure because this brief contains 6,169 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      The undersigned certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Office Word 2010 in 14-point Times New Roman type.

Dated: November 10, 2025      **FELHABER LARSON**

By:      */s/ Grant T. Collins*
Grant T. Collins, MN #390654
Brandon J. Wheeler, MN #396336
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
Telephone: (612) 339-6321
Facsimile: (612) 338-0535
gcollins@felhaber.com
bwheeler@felhaber.com

**ATTORNEYS FOR PLAINTIFF-APPELLANT
LEADINGAGE MINNESOTA AND
PLAINTIFF-APPELLANT CARE
PROVIDERS OF MINNESOTA**

27

# 8TH CIR. R. 28A(H) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to 8th Cir. R. 28A(h), a version of Appellant's Reply Brief in PDF format. I hereby certify that the file has been scanned for viruses and that it is virus-free.

Dated: November 10, 2025      **FELHABER LARSON**

By:    */s/ Grant T. Collins*
       Grant T. Collins, MN #390654
       Brandon J. Wheeler, MN #396336
       220 South Sixth Street, Suite 2200
       Minneapolis, MN 55402-4504
       Telephone: (612) 339-6321
       Facsimile: (612) 338-0535
       gcollins@felhaber.com
       bwheeler@felhaber.com

**ATTORNEYS FOR PLAINTIFF-APPELLANT LEADINGAGE MINNESOTA AND PLAINTIFF-APPELLANT CARE PROVIDERS OF MINNESOTA**

4552937.v2

# CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

Dated: November 10, 2025 **FELHABER LARSON**

By: */s/ Grant T. Collins*
Grant T. Collins, MN #390654
Brandon J. Wheeler, MN #396336
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
Telephone: (612) 339-6321
Facsimile: (612) 338-0535
gcollins@felhaber.com
bwheeler@felhaber.com

**ATTORNEYS FOR PLAINTIFF-APPELLANT LEADINGAGE MINNESOTA AND PLAINTIFF-APPELLANT CARE PROVIDERS OF MINNESOTA**

4552937.v2